**STICKELS et., Appropriation of an Easement, In re.**

Ohio Appeals, Second District, Madison County.

No. 180. Decided October 18, 1951.

Gerald A. Baynes, London, for plaintiffs-appellants.
Hon. C. William O'Neill, Atty. Genl., Everett H. Krueger, Asst. Atty. Genl., Columbus, for defendant-appellee.

## OPINION

By MILLER, J.

This is a law appeal from the judgment of the Court of Common Pleas rendered upon the verdict of a jury. The record reveals that on July 26, 1950, the Director of Highways instituted a proceedings to appropriate certain property of the appellants for highway purposes and in accordance with the resolution and finding filed therewith caused the sum of $2045.30 to be deposited with the Clerk of Courts. From this finding the appellants perfected an appeal and the issue was submitted to a jury on April 26; 1951. The jury assessed the total compensation and damages due the landowners, appellants, including a separate finding as to the value of structures located on the land, at $3800.00.

The first assignment of error alleges that the verdict is not sustained by the evidence and is against the manifest weight of the same. We have examined the entire record on this

subject and find that it is not well taken. The record discloses that the appellants offered evidence through various witnesses tending to establish the total compensation due them was between the sums of $9200.00 and $15,600.00. On the other hand, the appellee's witnesses fixed the same as being between $2743.00 and $3200.00. The appellants are contending that the questions propounded to the appellee's witnesses as to the market value can have no probative weight because the manner of determining the fair market value, that is, as between a willing buyer and a willing seller, was not used as a preface to the questions, they being only asked to state the fair market value. We find nothing in the record tending to show that these witnesses did not comprehend the meaning of this term or that they misapplied it in reaching their conclusions. These witnesses were fully cross-examined by counsel for the appellants and their knowledge could have been tested on the meaning of the words, which was not done. The term "fair market value" was defined in the appellants' special instruction No. 2 given to the jury before argument, as well as in the court's general charge. So it must be assumed that the jury had a full and complete understanding of the phrase.

The appellants also complain that these witnesses were not asked to base their opinion on the highest and best use that could be had of the property. The rule of valuation in land appropriation proceedings is not what the property is worth for any particular use, but what it is worth generally for any and all uses for which it might be suitable, including the most valuable uses to which it could reasonably and practically be adapted. **In re Appropriation by Supt. of Public Works v. Schaeffer, et al., 155 Oh St 454.** It is well established that a verdict will not be set aside on error on the weight of the evidence unless it is so clearly unsupported as to indicate misapprehension, bias or wilful disregard of duty. We find no such facts here as there was clearly a conflict in the testimony which had to be weighed by the jury and may not be by a reviewing Court.

It is urged next that the court erred in charging the jury that the verdict must be based upon the value of the property at the time the property is taken, which is the time of trial, and in refusing to instruct that the time of taking was July 26, 1950, when the proceeding was instituted. At the outset it will be noted that the appellee did not actually enter upon the premises or take over physical possession of the same prior to the trial. In order that determination of the time of taking may be made it becomes necessary that the Constitution and

statutes governing eminent domain be construed. The constitutional provision directly applicable to the appropriation of private property is Section 19 Article I of the Bill of Rights, which reads as follows:

"Private property shall ever be held inviolate but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money; and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner."

This section, which operates as a limitation on the sovereign power of eminent domain, requires the payment of compensation or the deposit thereof before the taking of private property for a public use in all cases except where such property is taken in time of war or for the purpose of making or repairing roads. In this connection the Supreme Court of Ohio has defined the meaning of the phrase "where private property shall be taken for public use," as pronounced by **Section 19, Article I of the Constitution. Paragraph 3** of the syllabus of **The Pontiac Improvement Company v. Board, 104 Oh St 447,** 13 N. E. (2d) 635 reads:

"3. The phrase, 'where private property shall be taken for public use,' contained in **Section 19, Article I of the Constitution of Ohio,** implies possession, occupation and enjoyment of the property by the public, or by public agencies, to be used for public purposes."

While the quoted case involves the question of "right and power to appropriate," the foregoing evinces that the Supreme Court construes this phrase to contemplate actual possession and occupation of the property appropriated as precedent to the taking of private property by a public agency.

Considering next the section of highway laws pertinent hereto, §1178-37 GC, authorizes the Director of Highways to appropriate property for highway purposes and outlines the required procedure therefor. This section specifies that upon the filing of the resolution or finding and the deposit of the amount fixed by the Director which he deems to be due the landowner for compensation and damages, if any, the Director then "* * * shall be authorized to take possession of and enter upon said property for any and all such purposes." The deposit, it is to be noted, is required by the next section to be

returned forthwith to appellee upon perfection of appellant's appeal. **Sec. 1178-38 GC** prescribes the manner for appeal by the property owner from the amount fixed by the Director and the general procedure for trial in appropriation cases.

It further provides that upon the filing of a petition in error as herein done by appellants.

"\* \* \* The right of the State to possession of the property shall not be affected by such review."

This provision recognizes the importance to the general welfare of the construction of public highways and was enacted to preclude the delay of such construction during appellate review. This section also sets forth the provision enabling appellee to abandon appropriation proceedings, to wit:

"The Director of highways, if he has not occupied or changed the property appropriated, shall be authorized, at any time, but not later than thirty days after the final determination of the cause, to elect to abandon the appropriation proceedings upon the payment of the costs and reasonable attorney fees to be fixed by the court."

This provision, it would seem, indicates the Legislature contemplated the Director of Highways might or might not take possession of the premises subject to appropriation prior to the trial. In this connection, the above cited provision of §1178-37 and 1178-38 GC should be read in pari materia with §1178-39 GC, which reads as follows:

"When a building or other structure is situated upon the land appropriated for any highway improvement, or is situated partly upon the adjoining land so that such structure cannot be divided upon the line between such lands, without manifest injury thereto, the jury, in assessing compensation to any owner of the land, shall assess the value thereof, exclusive of the structure, and make a separate finding of the value of the structure and the title to said structure shall vest in the state with the right to enter upon the site of said structure and adjoining land upon which the structure is located for the purpose of removing said structure therefrom."

In the case at bar a number of structures were situated upon appellants' land. Accordingly under the prohibitory provisions of the foregoing section the title to said structures would not vest in the State nor would the State have the right of entry upon the site of said structures for the purposes of removal thereof until after the award had been determined. It appears that the intendment of this section is that there can be no taking of property subject to appropriation by the Director of Highways where buildings or other structures are situated in whole or in part upon the property to be

taken until the jury has assessed the value thereof. This prohibition would seem to protect the interests of the landowner in that the structures situated upon the land to be appropriated, which structures are to be valued separately by the jury, may not be removed prior to the trial and view of the premises by the jury.

The appellants argue that the taking occurs at the time the Director of Highways files his resolution or finding; that the right of entry upon the premises subject to appropriation accrues to appellee contemporaneously with the filing of said resolution and finding, and that this right of entry alone is equivalent to the taking of private property for public use. This contention is rebutted by the provisions of the statute applicable to appropriation of property by the State Highway Department.

1. Where structures are situated upon premises to be appropriated the vesting title to said structures is stayed and the right of entry upon the premises for the removal of the structures is prohibited by §1178-39 GC until after assessment by the jury of the respective valuations of the land and structures.

2. **Sec. 1178-38 GC** giving appellee the authority to abandon appropriation proceedings is indicative of the legislative intent that the "taking" does not occur until after the property subject to appropriation has actually been occupied by the State. The law is well settled in this State as in most other jurisdictions that the fair market value of property subject to appropriation is to be computed and assessed as of the time of taking. We think the law of this State is to the effect that the taking occurs at the time the condemnor takes possession of the property appropriated or alternatively, at the time of the trial in the absence of prior subjugation of the property by the condemnor to possession, occupancy and enjoyment of use. We find no cases directly construing the foregoing sections with respect to determination of the time of taking. However, we do find a number of cases pertaining to other condemnation statutes and appropriation procedures which appear to throw some light upon this subject.

**Section 19, Article I of the Constitution,** together with the condemnation statutes relating to conservancy districts were the subject of construction by the Supreme Court in the case of **Miami Conservancy District v. Bowers, 100 Oh St 317.** The appropriation procedures for conservancy districts are comparable in many respects to that prescribed by the cited section of the Highway Laws. In lieu of fixing the valuation of

the property subject to appropriation by an executive or administrative office and the deposit thereof in court the Conservancy Act provides for the fixing of such valuation by the board of appraisers, to which valuation the landowner may agree or except. An exception is effected by the filing of an appeal and the final determination thereof is made by a jury in much the same manner as specified by §1178-38 GC. At page 319 of the Bowers case, supra, the court said:

"* * * In this instance there was a failure to agree, the property owner having filed exceptions to such report  There was, therefore, no 'taking' of this property, and could not be under the provisions of the Constitution above quoted, without a trial by jury; and, consequently, no 'taking' until then. It is clear, therefore, that the action of the trial court, holding that the 'taking' of said property did not occur on July 30, 1917, the date of the confirmation of the appraisement by the conservancy court, was correct, and, hence, the court properly excluded evidence of market value of the property as of that date and permitted evidence of market value only as of the time of the trial."

A like result was reached in an appropriation proceeding initiated by a municipal corporation in the case of **Nichols v. Cleveland, 104 Oh St 19**, wherein it was stated at **page 27**:

"And the law is well settled that under these provisions of the **Constitution, Article I, Section 19 and Article XIII, Section 5,** the property should be valued as of the date when the jury views the premises."

In the case of **Ornstein v. C. & O. Railroad Co., 26 Abs 78**, by this Court, it is said at **page 84:**

"¹ * * In Ohio the general rule of fixing value of property appropriated under the right of eminent domain is as of the date of the impaneling of the jury."

In the case of **23 Tracts of Land, etc. v. United States, 57 Abs 135**, at **page 138** on this subject the court says:

"The filing of a petition in condemnation without taking possession is not a taking. The condemnor may discontinue or abandon his effort. * * * But it would seem clear that the taking of physical possession of the property by the Government and the appropriation of it to its own purposes is a taking for which the then owner is entitled to compensation under the Constitution."

In view of the foregoing authorities we hold that the trial court committed no error in instructing the jury that the value of the property taken should be fixed as of the date of the trial. Counsel for the appellants have cited numerous cases from foreign jurisdictions which are of no assistance

in the light of the Ohio authorities cited and also since the Constitution and laws are at variance with those of this State.

The court did not err in refusing to instruct the jury that the appellants were entitled to interest from July 26, 1950.

We find none of the other errors assigned well taken and since they were set forth in the appellants' motion for a new trial and were fully answered by the trial court in its opinion overruling the motion, it would serve no good purpose for us to extend this opinion by reenumerating the reasoning of the trial court.

Finding no error in the record the judgment will be affirmed.

WISEMAN, J, concurs.
HORNBECK, PJ, not participating.