**DRISCOLL BROS. & COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. No. 8054.

United States District Court
N. D. New York.

Facts Stipulated Feb. 16, 1963.

Finally Submitted July 2, 1963.

Decided Aug. 2, 1963.

Lusk, Folmer, Ryan & Fenstermacher, Cortland, N. Y., for plaintiff; Paul J. Yesawich, Jr., Cortland, N. Y., of counsel.

Justin J. Mahoney, U. S. Atty., Syracuse, N. Y., for defendant; Arthur F. Barns, Asst. U. S. Atty., Syracuse, N. Y., Rufus Stetson, Atty., Tax Division Dept. of Justice, Washington, D. C., of counsel.

BRENNAN, District Judge.

This litigation involves the claimed exemption from taxation of the gain resulting from the condemnation by the State of New York of the real property of a liquidated corporation. The decision involves principally the determination for tax purposes of the date of the sale of said property and the date of the resulting taxable gain. The litigation was finally submitted to this court upon stipulated facts and the problem is to apply the law thereto. A brief background of the essential facts is set out below.

At the times pertinent herein, the plaintiff was the owner of real property at the City of Ithaca, New York which had been used in its business as a building supply dealer. Under date of June 16, 1955 the plaintiff was advised by letter from the Department of Public Works of the State of New York that in accordance with New York State law, a map of and a description of a part of plaintiff's property had been filed in the Department of State. The letter, by its terms, gave to the plaintiff advance information that the State may require plaintiff's interest in said property, so described, for highway purposes. Subsequently and on August 15, 1955 the map or maps, above referred to, were filed in the Office of the Clerk of Tompkins County, New York, wherein said property was located. The action taken was in accordance with the Highway Law of the State of New York which, by its provisions, vests the title of the property in the State upon the filing of the map in the County Clerk's office where the property is located. New York Highway Law (McKinney's Consol.Laws, c. 25) Section 30.

In the meantime and on July 25, 1955 a representative of the State presented to the plaintiff a form entitled "Agreement of Adjustment". This form was completed and signed by the plaintiff on the above date and is in effect an offer by the plaintiff to accept the sum of $216,-300, as compensation for the property taken and the damages incidental thereto. This agreement was submitted to the State of New York and was subject to conditions contained therein. New York State authorities delayed accepting said agreement until about April 19, 1956 when it was finally approved and mailed to the plaintiff on April 25, 1956. About a month later and on May 29, 1956 vouchers were issued by the State payable in the total amount above mentioned, which were accepted by the plaintiff in satisfaction of its claim and in accordance with the terms of the agreement. On May 23, 1956, a few days prior to the receipt of the above vouchers, the company duly

adopted a plan of complete liquidation and on May 2, 1957 filed in the office of the Secretary of the State of New York a certificate terminating its corporate existence. The plan, above mentioned, was adopted after plaintiff's efforts to obtain replacement property were unsuccessful and plaintiff had received information as to the imminent payment of the compensation mentioned above.

As the result of the appropriation, referred to above, the plaintiff had a gain of $180,238.77 over and above its tax basis for the property appropriated. Plaintiff took the position that this gain was not taxable and did not report same in its tax returns for either of its fiscal years which ended on October 31, 1955 and October 31, 1956. The Commissioner of Internal Revenue in effect determined that the sale of property and the resulting gain to the plaintiff accrued during the fiscal year which ended October 31, 1955 and was taxable in that year. A deficiency in the total amount of $49,234.49 was later assessed and paid by the plaintiff on April 18, 1958. Preliminary proceedings required for the institution of this action were taken and the suit was timely commenced. The issues are before the court for decision.

Plaintiff claims that it is exempt from taxation upon the gain referred to above. The claim is based upon the provisions of Section 337 of the Internal Revenue Code of 1954, 26 U.S.C. § 337(a) which provides in substance that if a corporation adopts a plan of complete liquidation and within a twelve month period thereafter all of its assets are distributed in such liquidation, then no gain or loss shall be recognized to such corporation from the sale of its property within the above time period.

The plaintiff appears to realize that the plan of liquidation here was not adopted until after the compensation had been fixed by the agreement and only a few days prior to the plaintiff's receipt of same. It is therefore contended that the "sale", referred to in the statute, cannot be considered as having taken place until the gain is actually realized by the taxpayer. This contention may have some rational or equitable basis as the term "sale" is used in ordinary business transactions. Decisions cited to or known to this court which construe the meaning of the word in the context of the taxing statutes reject such contention and hold that the sale takes place at the time title passes where property is acquired by condemnation.

The question was considered in decisions made prior to the enactment of Section 337 and involving principally the question of the gain or loss resulting from the sale of a capital asset. It is sufficient to cite Hawaiian Gas Products v. Commissioner, 9 Cir., 126 F.2d 4, cert. denied 317 U.S. 653, 63 S.Ct. 48, 87 L.Ed. 525 and Commissioner v. Kieselbach, 3 Cir., 127 F.2d 359, affd. 317 U.S. 399 (see page 403) 63 S.Ct. 303, 87 L.Ed. 358 as authority for the above statement.

The historical facts and something of the legislative background of Section 337 is found in Towanda Textiles Inc. v. U. S., Ct.Cl., 180 F.Supp. 373. The decision, while not in point here, does contain a statement which is pertinent. In discussing the section, we find 180 F.Supp. at page 376 the following statement. "Literally, as involuntary conversion is not a sale but what Congress had in mind was a conversion of a corporation's capital assets into cash, whether voluntary or involuntary, and the distribution of the cash to the stockholders."

In Wood Harmon Corporation v. U. S., D.C., 206 F.Supp. 773, Judge Dawson held, under circumstances similar to those found here, that the sale was effective, for the purposes of Section 337, when title vested in the condemning authority. He relied upon the decision in Commissioner v. Kieselbach, supra, and Rev.Rul. 59–108, 1959–1 Cum.Bull. 72. On appeal to the Circuit Court, the holding was not questioned. Wood Harmon Corp. v. U. S., 2 Cir., 311 F.2d 918. The decision in Kent Mfg. Corp. v. Commissioner, 4 Cir., 288 F.2d 812 involved a fire loss and is not in point here. The following quotation, taken therefrom 288 F.2d at page 815, is per-

suasive that the sale here must be construed as including a transfer of title by condemnation as recognized by decisions prior to the enactment of Section 337. "The words 'sale or exchange,' as used in §§ 337 and 392 are given a reasonable construction if they are held to include every transaction, which, by previously enacted provisions of law, is required to be treated as a sale or exchange. An earlier specific definition may properly color a subsequent use of the same words without re-definition."

█ In concluding that the sale here took place on August 15, 1955 when title passed by the filing of the map in the Clerk's office, the court has not overlooked the fact that Section 337 is remedial in its nature. If its purpose is thwarted in condemnation actions, where title is taken on short notice or no notice at all, the remedy would seem to be by amendment rather than by judicial construction which may well upset long accepted precedents where a sale agreement is made which involves the determination of the sale price at a later date.

The sale here, having taken place prior to the adoption of the plan of liquidation, the plaintiff is not entitled to the exemption provided in Section 337 and the gain is properly taxable to the plaintiff corporation.

█ The above holding does not dispose of the above litigation since same requires a determination of the year in which the gain is properly taxable. The defendant contends that the resulting gain is taxable in the year 1955 and the assessment was made accordingly. The plaintiff contends that even if it is found that the gain is properly taxable to it, same should have been assessed in the year 1956. Additional facts bearing upon the question are set out below.

Plaintiff adopted the time period from November 1st of each year until October 31st of the succeeding year as its fiscal year. Its books of account were kept on an accrual basis as permitted by the provisions of 26 U.S.C. § 446(c). After it came to the plaintiff's knowledge that its properties were to be condemned, it made serious efforts to secure similar properties for replacement purposes. These efforts continued beyond the close of its fiscal year on October 31, 1955. Under date of December 30, 1955, the plaintiff by letter, in which was described the condemnation proceedings taken, the "Agreement of Adjustment" and the plaintiff's efforts to acquire similar properties; requested the District Director at Syracuse N. Y. "to advise which fiscal year must be used for reporting this capital gain". The District Director replied on January 19, 1956 and after quoting from the provisions of 26 U.S.C. § 1033(B) indicated that the transaction should be reported upon the tax return for the fiscal year of 1956 since "no payment had been received or new building purchased".

Judicial precedents designed to clarify and to define "accrual" as used in the tax statute are numerous and do not always accomplish their purpose. This court discussed same to some extent in the decision of C. A. Durr Packing Co. v. Shaughnessy, D.C., 81 F.Supp. 33. In any event, it would seem that we could start with the description or definition of the accrual method as found in C.F.R. Chapter I, Section 1.446–1 (ii) which provides generally that income is to be included under the accrual method for the taxable year when all of the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy.

The opening statement of the decision in Frost Lumber Industries v. Commissioner, 5 Cir., 128 F.2d 693 indicates the difficulty of applying the law to the facts involved. Referring again to the decision in C. A. Durr Packing Co. v. Shaughnessy, supra, the general rules indicate that a claim may be deemed accrued when (a) all of the events have occurred which fix the amount of the claim and determine the question of liability, (b) the amount is readily ascertainable, (c) the liability is determined rather than contingent. Here it would seem that the first two requirements had not been met in the fiscal year of 1955. True the lia-

bility of the State of New York to the plaintiff had been determined but the amount of the claim arising therefrom had not been fixed and this court would hold that it was not readily ascertainable. The defendant argues that the "Agreement of Adjustment" signed by the plaintiff in 1955 satisfies such requirement but the agreement in no way bound the State of New York which could, until April 1956, have rejected the plaintiff's offer and litigated the question of the amount of damage involved in the taking. The question must be viewed in the light of the actual situation as it existed at the time the plaintiff was called upon to file its 1955 tax return. Subsequent events may tend to uphold the defendant's contention but same would require a theoretical approach rather than the practical test referred to in Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538.

The decision in Patrick McGuirl Inc. v. Commissioner, 2 Cir., 74 F.2d 729 would seem to be entirely in point and requires no discussion. See also Commissioner v. Henry Hoss Co., 9 Cir., 210 F.2d 553; Craig v. Thompson, 8 Cir., 177 F.2d 457. Although it is not stressed in the briefs, it would seem that there is an additional practical difficulty in applying the defendant's contention. Here the plaintiff was making serious efforts to obtain similar property so as to continue its business. These efforts continued beyond the taxable year of 1955 and the amount of taxable gain, which was required to be reported, could not be determined while the efforts of the plaintiff continued during the time period provided in the statute. This situation seemed to be appreciated by the District Director in his letter of January 7, 1956 and the defendant in no way indicates the basis for the apparent rejection of the District Director's conclusion.

The findings of fact as stipulated, together with this decision, will constitute the findings of fact herein.

It is concluded that the gain resulting to the plaintiff by reason of the facts herein stated is properly taxable to it for the year 1956.

In accordance with the stipulation, the parties will recompute the amount of tax which should have been paid by the plaintiff for the year 1956. This court will retain jurisdiction to determine said amount if the parties are unable to agree. The entry of judgment will be withheld at this time pending the proceedings to be taken as indicated above, and it is

So ordered.