GENERAL BAKING COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1466–65. Filed May 23, 1967.

*David G. Sacks* and *Donald P. Wefer*, for the petitioner.

*Eugene L. Wilpon* and *Jay Hamelburg*, for the respondent.

FORRESTER, *Judge:* Respondent has determined deficiencies in the income taxes of petitioner in the amounts of $212,871.88 and $23,240.42 for the taxable years 1958 and 1959, respectively. Concessions have been made, and the only issue now remaining is whether a long-term capital gain realized from a condemnation proceeding is to be taxed completely or in part in 1960 when the condemnation proceedings commenced or in 1961 when the proceedings ended and the award was received.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

The petitioner is a corporation whose principal business is the preparation and sale of bread and bakery products. It was organized under the laws of the State of New York and its principal place of business is in New York City. The petitioner uses an accrual method of accounting and a calendar year basis for keeping its own books and for reporting income for income tax purposes. For the calendar years 1958 through 1961 petitioner filed its income tax returns with the district director of internal revenue in the Upper Manhattan District of New York.

On December 22, 1960, after several months of negotiation, the Director of Highways of the State of Ohio instituted a proceeding in the Court of Common Pleas of Franklin County, Ohio, to appropriate a bakery plant owned by petitioner in Columbus, Ohio. The amount of $312,000 was deposited in that court by the director as compensation for the land and the bakery plant located on the land. Amounts of $56,000 and $256,000 were respectively designated as compensation for the land and the plant.

In 1961, the petitioner filed an appeal with such court with respect to the amount of compensation to be received for the Columbus property. The State's right to condemn the property was not challenged.

On February 8, 1961, the county prosecutor and the petitioner agreed to the payment of $375,000 as the total compensation and damages to the petitioner. The court then entered a "Journal Entry

---

[1] We do not have jurisdiction over either 1960 or 1961 since no deficiency was determined for either year, but we must decide in which of those years the condemnation award is returnable because of the carryback loss from 1961 to 1958. Sec. 6214(b), I.R.C. 1954.

Settlement" approving such agreement. The settlement provided that $375,000 was to be paid by the court upon application of the landowners. It further provided that a perpetual easement over the land was to vest in the State of Ohio on April 1, 1961. Prior to such journal entry (which is reproduced below) physical possession of the property remained in the petitioner.

IN THE COURT OF COMMON PLEAS, FRANKLIN COUNTY, OHIO

IN THE MATTER OF THE APPROPRIATION BY THE STATE OF OHIO OF EASEMENTS FOR HIGHWAY PURPOSES OVER THE PROPERTY OF THE GENERAL BAKING COMPANY, ET AL., ON STATE ROUTE No. 3, SECTION 16.91, FRANKLIN COUNTY, OHIO.

No. 209708
JOURNAL ENTRY
SETTLEMENT

It appears to the Court that the owners of the property, over which easements were appropriated in this action, have agreed with the Director of Highways of the State of Ohio, upon the amount of compensation and damages due said owners by reason of said appropriation and have agreed to accept and withdraw the amount of THREE HUNDRED SEVENTY FIVE THOUSAND AND NO/100 DOLLARS ($375,000.00), in full payment thereof, and do hereby release all claims for further compensation or damages, including interest to April 1, 1961 and limitation of access, resulting from the construction and improvement of State Route No. 3, Section 16.91, or from the appropriation of said easements.

In conformity with said agreement, it is hereby ordered, adjudged and decreed that the said Director of Highways shall deposit with the Clerk of this Court, a sum sufficient to-wit SIXTY THREE THOUSAND AND NO/100 ($63,000.00), which when added to the original deposit herein of THREE HUNDRED TWELVE THOUSAND AND NO/100 ($312,000.00), equals the total amount of the agreed settlement of THREE HUNDRED SEVENTY FIVE THOUSAND AND NO/100 DOLLARS ($375,000.00), which shall be paid to the landowners hereinafter named, upon application to this Court as their interests may appear.

It is further ordered, adjudged and decreed that easements for highway purposes in, over and upon the premises described in the Resolution and Finding filed herein as Parcel No. 10 (HIGHWAY) located in the City of Columbus, Franklin County, Ohio, as shown on a survey made by the Department of Highways, and recorded in the records of Franklin County, Ohio, and being more fully described as follows: * * *

Together with Parcel No. 10–LA (HIGHWAY) located in the City of Columbus, Franklin County, Ohio, as shown on a survey made by the Department of Highways, and recorded in the records of Franklin County, Ohio, and being more fully described as follows: * * *

be and the same hereby are duly vested in the State of Ohio, April 1, 1961, free and clear of all claims of the owners of said land and any person or persons having an interest therein, to-wit:

The General Baking Company, C. T. Corporation System, Statutory Agent — Union Commerce Building, Cleveland, Ohio

Treasurer of Franklin County, Ohio — Court House, Columbus, Ohio

It is further ordered that the Director of Highways of the State of Ohio, pay all court costs herein accrued and that a record be made of these proceedings according to law.

(S)  Mark McElroy,
  MARK McELROY,
    *Attorney General,*
      *State of Ohio.*

(S)  Wm. D. Henry,
  WILLIAM D. HENRY,
    *Special Counsel for*
      *Attorney General.*

(S)  Vorys Sater Seymour Pease,
  VORYS, SATER, SEYMOUR & PEASE,
    *Attorneys for Landowners.*

(S)  HOLDEN,
    *Judge.*

The State of Ohio
Franklin County,
  ss

I, JOSEPH M. CLIFFORD, Clerk of the Court of Common Pleas, Within and for Said County, Relations, Within and for Said County, Hereby *Certify* That the Above and Foregoing is Truly Taken and Copied From the Original Entry—Now on File in My Office.

Witness My Hand and Seal of Said Court

THIS 28 DAY OF FEB. A.D. 1961
    JOSEPH M. CLIFFORD,
      *Clerk.*

by (S) D. CAMPBELL,
      *Deputy.*

After the "Journal Entry Settlement" was made, the entire $375,000 (less $1,564.40 withheld for unpaid 1960 real estate taxes) was turned over to the petitioner in 1961. No property taxes were assessed for the year 1961. Prior to the "Journal Entry Settlement," the petitioner did not request withdrawal of any of the desposited proceeds.

Petitioner's adjusted basis for determining gain on the sale or exchange of the appropriated land was $65,004, and the adjusted basis of the appropriated building was $90,583, an aggregate adjusted basis of $155,587. Petitioner's expenses in connection with the appropriation of the land and building were $1,375.

Petitioner's amended return for 1960 reported the entire long-term capital gain of $218,038 from the condemnation of the Columbus property. The amount of the gain is not disputed. On its return for 1961, the petitioner reported a net loss of $2,056,217.

In his deficiency notice, the Commissioner allocated the gain on the condemnation to 1961 and used that amount as an offset to the loss there reported. The Commissioner then recomputed the loss for 1961 and carried the net amount back to 1958 as an offset against the income reported in 1958.

#### OPINION

The sole remaining issue is whether the $218,038 long-term capital gain resulting from the condemnation of petitioner's plant is to be reported entirely in 1960, entirely in 1961, or partially in both years.

The petitioner contends primarily that the total condemnation award of $375,000 should be reported as accrued in 1960 when the $312,000 deposit was made for its Columbus property.[2] Petitioner contends in the alternative that the $312,000 deposited for the land and buildings was properly accrued in 1960, and as a second alternative, that the $256,000 amount deposited for the structure was constructively received under a claim of right in 1960.

### The Ohio Law

In order to determine whether petitioner had income in 1960 from the condemnation proceeding, we must determine its rights under the applicable Ohio law.

The condemnation proceedings were governed by sections 5519.01, 5519.02, and 5519.03 of the Ohio Revised Code. The provisions of these statutes are as follows:

Sec. 5519.01 Appropriation of property.

If the director of highways is unable to purchase property for any purpose authorized by Chapters 5501., 5503., 5505., 5511., 5513., 5515., 5517., 5519., 5521., 5523., 5525., 5527., 5529., 5531., and 5533. of the Revised Code, he shall first enter on the journal of the department of highways a finding that it is necessary, for the public convenience and welfare, to appropriate such property as he deems needed for such purposes. Such finding shall contain a definite, accurate, and detailed description of the property, and the name and place of residence, if known or with reasonable diligence ascertainable, of the owner of the property appropriated.

The director shall, in such finding, fix what he deems the value of such property appropriated, together with damages to the residue and deposit the value thereof, together with such damages with the probate court or the court of common pleas of the county within which such property, or a part thereof, is situated, for the use and benefit of such owner, and thereupon the director may take possession of and enter upon said property, including the buildings and structures thereon, for any such purposes. At the time of making such deposit the director shall also file with such court a true copy of the resolution or finding together with a precipe and sufficient additional copies of the resolution or finding for service of such resolution or finding, also a form of printer's notice, if required for service by publication, and a plat of the property appropriated, which copy and plat shall be recorded with said court.

The clerk of such court shall within three days issue notice, in general form and manner of a summons, to such owner of the amount of money deposited with the court on account of the property appropriated, which notice shall contain, or have attached, a definite, accurate, and detailed description of the property appropriated, as shown by or contained in the copy of the resolution or finding filed with the court by the director, and shall also be accompanied by a plat of the property appropriated. Upon application of such owner the court shall turn over to him the amount of money so deposited. Notice shall be served upon

---

[2] It is to petitioner's tax advantage to have the entire gain reported in 1960 instead of 1961, because if reported in 1961, the capital gain would be completely offset by the $2 million net operating loss there reported and thus (by reducing the net operating loss carryback to 1958) leave more of the 1958 profits to be taxed at usual rates.

such owner and return made within three days and the costs thereof shall be paid as in other civil actions. There shall be indorsed on the face or back thereof the final date on which a petition setting forth an intention to appeal may be filed as provided in section 5519.02 of the Revised Code. In case the owner is a nonresident of the state or cannot be found the clerk shall give notice by publication by one insertion in some newspaper published in and of general circulation in the county, or if there is no such newspaper published in the county then in some newspaper of general circulation in the county.

*     *     *     *     *     *     *

Sec. 5519.02   Appeal from finding of director of highways.

If any owner of property appropriated by the director of highways is not satisfied with the amount of money as fixed by the director, such owner may, within thirty days after the service of said notice, or within forty days after the date of publication, if service is made by publication, file a written petition, in duplicate, in the court, setting forth an intention to appeal from the amount so fixed. The petition shall contain a description of the property appropriated and a prayer that the amount due the appellant be determined.

The court shall fix the amount of bond to be given by the appellant, which shall be reasonable, and cause an entry thereof to be made on the journal of the court, and within three days transmit by registered or certified mail to the director one copy of said notice of intention to appeal and a copy of said entry.

The appellant, within five days after the fixing of the amount of bond, shall file with the court a bond, in the amount so fixed, with sureties to the approval of the court, and such bond shall be conditioned to pay all costs made on the appeal if the appellant fails to sustain such appeal, or if the same is dismissed. Minors or other persons under disability, or their respective guardians, shall not be required to give bond. The property of such persons shall be liable for all costs adjudged against them or their legal representatives.

Upon bond being filed and approved, or in cases where no bond is required upon notice of intention to appeal being filed, the court shall fix a day, not exceeding five days thereafter, for the hearing of all preliminary questions and motions and the examination of the papers and proceedings.

On the day fixed all preliminary motions and questions arising upon appeal shall be heard and determined, and if the court finds the proceedings are irregular, or the appeal is not perfected, it shall dismiss it at the cost of the appellant. The court may waive technical defects, errors, or omissions in such proceedings.

If the court finds that such appeal has been properly perfected, and that proceedings are substantially regular, the court shall transmit to the director the money deposited in the court for the use and benefit of the appellant. The court shall fix a day, not more than twenty days after it has determined that appeal has been properly perfected, for the trial of the case by jury. For purposes of the trial the appellants shall be considered as one party and the director as one party. The selection and impaneling of the jury, and the introduction of evidence to the jury shall be done under the direction of the court in accordance with the rules of law and procedure governing civil actions in the court of common pleas. However, it shall be grounds for challenge for cause if a juror has served in two appropriation trials in the same term of court.

If the owners of more than one parcel appeal, the court may, with the consent of the parties, order the cases to be consolidated and tried together, but the rights of each owner as to compensation, or damages, or both, shall be separately determined by the jury in its verdict.

Upon the motion of either party, the jury, under the care of an officer of the court and with such person as the court designates to show them the premises, shall examine the property taken and the property of the several appellants claimed to be damaged thereby. Such examination shall be before any testimony is submitted, except the plat and a survey of the property taken and the title papers of the appellant, if produced, which the jury may take with them. After making such examination, the jury shall return to the court at the time fixed therefor.

At the conclusion of the trial the court shall charge the jury and the jury shall find and return a verdict, separately, upon each claim for compensation and damages appealed from and the court shall render a judgment in favor of the appellants for the amount of the verdict returned by the jury in their favor. In case of the filing of a motion for a new trial or an appeal, which appeal shall be in the court of appeals, a bill of exceptions shall be allowed as in other civil cases, but the right of the state to possession of the property shall not be affected by the filing or disposition of a motion for a new trial, or by a review by any court of appellate jurisdiction. The director, if he has not occupied or changed the property appropriated, may, at any time but not later than thirty days after the final determination of the cause, elect to abandon the appropriation proceedings upon the payment of the costs and reasonable attorney fees to be fixed by the court.

The court shall make a record of all proceedings before it and tax the costs, which shall include jury fees, in favor of the prevailing and against the losing party. If there are several appellants in the same action and costs are adjudged against them, the court shall apportion the costs equitably among them.

\*           \*           \*           \*           \*           \*           \*

Sec. 5519.03   Separation of findings of land and structures; vacation of land; appraisals; appeals.

When a building or other structure is situated upon land appropriated for any highway improvement, or is situated partly upon the land appropriated therefor and partly upon adjoining land, so that such structure cannot be divided upon the line between such lands without manifest injury thereto, the jury, in assessing compensation to any owner of the land shall assess the value thereof exclusive of the structure. A separate finding shall be made of the value of the structure. The owner or occupant of such structure shall vacate the same within sixty days after service of notice as required under the provisions of section 5519.01 of the Revised Code, after which time the director may remove said structures. In the event such structures are removed before the jury has fixed the value of the same, the director, before such removal, shall cause an appraisal to be made by three persons, one to be appointed by the owner, one by the county auditor, and one by the director, and such appraisal may be used as evidence by the owner or director in the trial of said case but shall not be binding on said owner, director or the jury, and the expense of said appraisal shall be approved by the court and charged as costs in said case; shall cause pictures to be taken of all sides of said structure; and shall compile a complete description of said structure, which he shall preserve as evidence in said case to which the owner or occupants shall have access. Furthermore, where a building or structure is taken and the owner has appealed from the amount of compensation and damages as fixed by the director, at anytime before the termination of said case, said owner may apply to the court in which said case is pending to withdraw the portion of the deposit representing the sum fixed for said structure and such withdrawal shall in no

wise interfere with said case except the sum so withdrawn shall be deducted from the sum of the final verdict. Upon such application being made the court shall direct the clerk of courts to pay said sum to such owner or owners.

Section 5519.01 authorizes the director of highways to commence condemnation procedures when he has not been able to purchase the subject property. Before the director may take possession of any property he must deposit in court an amount which he feels compensates the property owner for its value plus any damages to the residue. The deposit is to be for the use and benefit of the owner, and such owner is to be notified of the deposit within 3 days.

Once the deposit is made, section 5519.01 gives the director the right to "take possession of and enter upon said property, including the buildings and structures thereon." Section 5519.03, however, gives the property owner 60 days in which to vacate before the director may begin removing the structures.

The deposit is available to the property owner upon his application, but if a properly perfected appeal is made from the amount fixed by the director, section 5519.02 provides that the amount deposited in the court is to be transmitted back to the director. The property owner has 30 days in which to perfect such appeal. The right to appeal is specifically limited to the amount of compensation for the taking, it has nothing to do with the right of the State to possession of the property. *In re Appropriation of Easements, Etc.*, 164 N.E. 2d 420, 170 Ohio Op. 276 (1960).

Section 5519.02 provides for a jury trial for the purpose of fixing compensation to the property owner. The jury fixes the value of each parcel of property and the damage caused thereto. The date for valuation purposes is the date of take. *Director of Highways* v. *Olrich*, 213 N.E. 2d 823, 5 Ohio St. 2d 70 (1966). That date is the date of trial unless prior to the trial there has been a take by an actual possession and occupation of the property appropriated by the State. *In re Appropriation of Easement For Highway Pur.*, 107 N.E. 2d 387, 389, 90 Ohio App. 471 (1951). Until there is a take of the property, the risk of loss and devaluation of the property is on the property owner. *Director of Highways* v. *Olrich, supra* at 825.

Section 5519.02 also provides that at any time within 30 days of the final determination of the cause, the director may elect to abandon the appropriation proceeding upon payment of court costs and attorney fees if he has not occupied or changed the property appropriated.

Under section 5519.03 if a taking does occur before the trial, the property owner may apply for withdrawal of the portion of the deposit representing the value of the structures. The withdrawal does not interfere with the case, except that the sum withdrawn is deducted from the total award.

The petitioner argues that 5519.03 actually allows the property owner to withdraw funds deposited for the structures at any time, whether or not a taking has occurred, but the statutory language refutes this. It reads, "Furthermore, where a building or structure is taken and the owner has appealed * * *." Cf. Milligan and Thorpe, "State Highway Appropriation Procedures," 32 Ohio Bar 685, 691 (1959). This reading is also consistent with the purpose of the condemnation legislation as interpreted by the Ohio Supreme Court, being that no compensation is required to be paid to the property owner until property is taken. *Director of Highways* v. *Olrich, supra* at 825.

In Ohio, title to condemned land passes after a taking occurs. The Ohio statutes and court decisions are not entirely satisfactory as regards the point in time when title is transferred to the State, but by holding that the risk of loss is on the property owner and that no right to compensation exists before such taking occurs, the Supreme Court of Ohio strongly implies, and we conclude, that there is no passage of title until such time. *Director of Highways* v. *Olrich, supra.* This interpretation is supported by the attorney general of Ohio who has issued an opinion which states that title to property in condemnation proceedings does not pass until the journalization of the transfer of the property by the court. He denies that even the taking of property constitutes a transfer of title.[3]

### Duty To Accrue Under Federal Law

Taxpayers on the accrual basis are required to report income in the year when "all the events have occurred which fix the right to receive such income *and* the amount thereof can be determined with reasonable accuracy." Sec. 1.451–1, Income Tax Regs.

In the present case all the events which fixed the right to receive income had not occurred as of December 31, 1960 (the last day of taxpayer's year for which an accrual could be made). In addition, it was not possible for the taxpayer to determine the total amount it would receive with reasonable accuracy until after that date.

On December 31, 1960, the director of highways had the right to completely withdraw from the condemnation proceedings with no obligation other than the payment of court costs and attorney fees. The petitioner not only had no right to any amount for the value of its property as of December 31, it actually bore all risks of decline in value

---

[3] "As the legislature has provided for only one means by which land appropriated under Chapter 5519., Revised Code, can be made a matter of record, and that is the journal entry on verdict, and as a court speaks only through its journal, it is my conclusion that legal title does not pass until the journalization of the journal entry on verdict." (Op. Atty. Gen. No. 3068, p. 4 (June 15, 1962))

Support for this theory is found in the February 1961 journal settlement entry which provides for the permanent easement to vest in the State of Ohio on Apr. 1, 1961.

occurring before a final determination of value had been made by a court. Title to the property was still in its name. If the property had been physically taken by December 31 the petitioner would have had an immediate right to some compensation under Ohio law, but the record shows that petitioner kept exclusive physical possession of the property until after the end of 1960. According to section 5519.03 of the Ohio Revised Code, the director did not have the right to remove any structures (for 60 days after the December 22 filing of notice), and petitioner could not have been required to surrender possession in 1960. As of December 31, 1960, no taking had occurred or could have occurred unless the petitioner had voluntarily given up all rights of appeal. The director of highways had no more than a future right to enter and take possession, a right which he could abandon at will. Duffey, "Condemnation of Structures," 16 Ohio St. L. J. 462 (1956). In the absence of a taking or a surrender of appeal rights, the petitioner had no right to compensation either from the original deposit or from any other source as of December 31, 1960.

The law is well settled that although the condemning sovereign has a final obligation to pay in 1 year, but no amount is awarded or ascertainable until a later year, the gain is to be reported in the later year.

*Patrick McGuirl, Inc.* v. *Commissioner*, 74 F. 2d 729 (C.A. 2, 1935), certiorari denied 295 U.S. 748, affirming a Memorandum Opinion of this Court, concerned an accrual basis taxpayer in circumstances close to the instant case. On the issue of accrual, the court said (p. 730):

The obligation to pay arose in 1926, when the title vested in the city, but the gain could not have been estimated in 1926 with any degree of accuracy, for the amount depended upon uncertainties of the future. [citing cases] * * * the existence of liability is not enough to establish the gain or loss to be taxable in a year. The gain must be "actual and present, not merely contemplated as more or less sure to occur in the future." [citing cases] * * * here, though the petitioner was entitled to just compensation for property condemned under eminent domain, the amount of the award was to be determined in judicial proceedings involving values placed upon the real estate by expert testimony. These are indefinite, depending upon the court's conclusion as to values. The amount awarded may not have been as much as the cost of the property to petitioner. * * * Unless all the events which fixed the amount and determined the liability of the city to this taxpayer occurred within the year, it may not be said that this was taxable in the year the right to an award accrued. [citing cases] * * *

The instant case is much stronger than *McGuirl* for accrual in the later year, for here title had not passed in 1960, and the sovereign had the right to abandon the entire proceeding. See also *Baltimore & O.R. Co.* v. *Commissioner*, 78 F. 2d 460 (C.A. 4, 1935), affirming 29 B.T.A. 368; and *Vim Securities Corporation*, 43 B.T.A. 759, af-

firmed on other grounds 130 F. 2d 106, certiorari denied 317 U.S. 686. The doctrine of these cases applies in the present situation where not only was there no amount ascertainable in 1960 as a fixed amount due from the State, but there was not even a fixed liability on the part of the State to continue with the condemnation.

Petitioner's alternative argument for accruing its gain in 1960 (the difference between its adjusted basis of $155,587 and the $312,000 deposited) on grounds that it had the right to receive this amount in that year must also fall for the reason that petitioner had no unrestricted right to receive the amount of the deposit.

In *Driscoll Bros. & Co.* v. *United States*, 221 F. Supp. 603 (N.D.N.Y. 1963), the taxpayer and the State of New York in 1955 entered into an agreement which provided for a fixed amount as settlement for a condemnation award. The amount was not approved by the appropriate New York court, nor was it paid until 1956. In holding that the amount of the settlement was not properly accruable in 1955 the court stated:

True the liability of the State of New York to the plaintiff had been determined but the amount of the claim arising therefrom had not been fixed and this court would hold that it was not readily ascertainable. The defendant argues that the "Agreement of Adjustment" signed by the plaintiff in 1955 satisfies such requirement but the agreement in no way bound the State of New York which could, until April 1956, have rejected the plaintiff's offer and litigated the question of the amount of damage involved in the taking. The question must be viewed in the light of the actual situation as it existed at the time the plaintiff was called upon to file its 1955 tax return. * * * [p. 606]

The reasoning of the above statement applies to the present situation. It is also noted that in the instant case no liability of the State of Ohio to the petitioner was determined and no agreement as to price had been reached by the end of 1960.

Petitioner's right to the $312,000 was severely restricted in 1960. True, it could have obtained the deposit by making application to the Court of Common Pleas, but if it had done so it would have surrendered and given up its right to contest the amount of the award. Section 5519.02 of the Ohio Revised Statutes provides that if an appeal is "properly perfected, and that proceedings are substantially regular, the court shall transmit to the director the money deposited in the court for the use and benefit of the appellant." This provision obviously assumes that the appellant would not withdraw the funds deposited for its use and benefit if it intended to appeal.[4]

---

[4] Though we find no Ohio cases on this point, the commentary on condemnation procedure in Ohio prepared by two members of the Ohio State Bar Association does discuss the right to the deposit and the right to appeal as being in the alternative. Milligan and Thorpe, "State Highway Appropriation Procedures," 32 Ohio Bar 685, 688.

In this factual posture there is no real distinction between a cash and an accrual basis taxpayer. The limitation or penalty for actually taking the $312,000 as to a cash basis taxpayer would be giving up his right to a possible larger award, and since there had been no taking in 1960, the amount of the award could not be determined by an accrual basis taxpayer with any reasonable degree of accuracy. The situation is therefore analogous to the principle which controlled in *Theodore H. Cohen*, 39 T.C. 1055, and *Abram Nesbitt 2d*, 43 T.C. 629, and prevented accrual in 1960. Also cf. *United States* v. *Steck*, 295 F.2d 682 (C.A. 10, 1961), where the taxpayer, by accepting the deposit, would have had to give up his claim for interest on the amount due him; and *Nitterhouse* v. *United States*, 207 F. 2d 618 (C.A. 3, 1953), certiorari denied 347 U.S. 943 (1954), where in addition to a court order, proof of title was needed to be shown before funds deposited would be released to the taxpayer. Also *North American Oil* v. *Burnet*, 286 U.S. 417, 423–424:

Nor is it material, for the purposes of this case, whether the company's return was * * * [on the cash or accrual basis]. In neither event was it taxable in 1916 on account of income which it had not yet received and which it might never receive.

### Requirement To Report Income Under the Claim of Right Doctrine

If during the taxable year any amounts have been credited to a taxpayer's account or set apart so that the taxpayer may draw upon them at any time they must be reported as constructively received. "However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions." Sec. 1.451–2(a), Income Tax Regs.

Petitioner's position is that from the time of the original deposit by the director of highways, it could always withdraw the amount of the deposit for the structure under the provisions of section 5519.03 without interfering with its claim for a greater amount of compensation. Petitioner reasons that this "unrestricted right" to the funds would require the excess of that amount over the basis of the property to be reported as a capital gain.

As we have pointed out, however, the Ohio law requires a taking before the owner is entitled to withdraw the funds deposited for the structure. (Sec. 5519.03). Since we have found that there was no taking in this case, the petitioner had no right to any part of the deposit by virtue of that section.

We find the entire $218,038 gain from the Ohio property is income to the petitioner in the year 1961.

*Decision will be entered under Rule 50.*