This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, Raymond Likowski, Barbara Likowski, Angelo Martella, and Rosa Martella (collectively referred to as "the Owners"), appeal from the judgment of the Summit County Court of Common Pleas, Probate Division. We affirm.
 {¶ 2} As pertinent to the present appeal, the Ohio Turnpike Commission ("the Commission") instituted proceedings to appropriate certain real property of the Owners for use as an interchange by the Ohio Turnpike. As the parties were unable to agree upon a price for the property, a hearing commenced on March 13, 2002 on the assessment of compensation to be paid to the Owners for the fee simple title to the real property. In the hearing, the parties stipulated that the date of the taking of the property was March 9, 2000. The jury returned a verdict awarding Owners $400,000 for the appropriation of the fee simple interest to the real property. In a nunc pro tunc journal entry dated July 24, 2002, the trial entered judgment on the verdict. This appeal followed.
 {¶ 3} The Owners assert four assignments of error. We will address each assignment of error in turn.
 First Assignment of Error {¶ 4} "THE TRIAL COURT ERRED AND COMMITTED ABUSE OF DISCRETION BY IMPROPERLY EXCLUDING EVIDENCE SUBMITTED BY OWNERS PROVING THAT THE ZONING LITIGATION CONCERNING A PORTION OF THE PROPERTY, WHICH WAS PENDING AS OF THE DATE OF THE TAKE, WAS SUBSEQUENTLY RESOLVED IN OWNERS' FAVOR BEFORE TRIAL THEREBY CONFIRMING THE REZONING OF THAT PORTION OF THE PROPERTY TO C-2 (COMMERCIAL) USE PRIOR TO THE TRIAL."
 {¶ 5} In the first assignment of error, the Owners assert that the trial court erred in not permitting the introduction of evidence that a portion of the property was able to be rezoned subsequent to the taking. Specifically, the Owners aver that, because the zoning lawsuit was pending as of the date of the taking, evidence of a later rezoning should have been permitted at trial. We disagree.
 {¶ 6} "Ordinarily, property taken for public use shall be valued as of the date of trial, that being the date of take, unless the appropriating authority has taken possession prior thereto, in which event compensation is determined as of the time of the taking." (emphasis added.) Long v. Director of Hwys. (1968), 15 Ohio App.2d 226, 227-28, citing to Director of Hwys. v. Olrich (1966), 5 Ohio St.2d 70, 72.
 {¶ 7} "The rule of valuation in an appropriation trial is not what the property is worth for any particular use, but what it is worth generally for any and all uses for which it might be suitable, including the most valuable uses to which it can reasonably and practically be adapted." Masheter v. Kebe (1976), 49 Ohio St.2d 148, paragraph one of the syllabus.
 {¶ 8} "If, in the opinion of an expert appraisal witness, an informed, willing purchaser would be presently agreeable to pay more than an amount justified under existing zoning, such evidence is admissible because it reflects upon the fair market value of the property." Id. at paragraph two of the syllabus. However, the test to determine the proper compensation award is to be applied "at the time of the taking." Id. at 151 (discussing the measure of compensation when a parcel of land is taken by eminent domain). Specifically, it is clear that "the fair market value of property subject to appropriation is to be computed and assessed as of the time of the taking." In Re Appropriation for Highway Purposes
(1951), 90 Ohio App. 471, 477.
 {¶ 9} As pertinent to this appeal, on March 9, 2000, the date of the take, the northern portion of the Owners' land was zoned residential, while the southern portion was zoned commercial. The land that was taken totaled approximately 11 acres. There was a portion of the property totaling approximately 1.6 acres that was not taken. With regard to the residential zoning on the northern portion of the property taken, the land was subject to a pending zoning challenge as of the date of the taking. Thereafter, approximately six months after the take occurred, a settlement was reached with regard to the zoning, enabling the zoning to change from residential to commercial. In the hearing held on the issue of compensation to be paid to the Owners for the fee simple title, the trial court ruled that evidence of the outcome of the pending rezoning action should be excluded from the valuation process. The trial court did, however, allow evidence that there was a pending zoning challenge as of the date of the take.
 {¶ 10} In the present case, the parties stipulated that the date of the take was March 9, 2000. Notably, there has been case law holding that there is an exception to the general rule that the date of the take is either the date of trial or the date of actual physical appropriation. See, for example, Evans v. Hope (1984), 12 Ohio St.3d 119,120 (holding that a court may establish an earlier date of take if depreciation is caused by the appropriating authority's action or inaction). However, such case law is inapplicable to the present appeal in that the parties stipulated as to the date of take and do not challenge such date on appeal. Rather, the Owners argue that, in spite of the fact that on the date of the take there was only a pending zoning challenge, they should be able to introduce evidence that approximately six months after that date, a settlement was reached on the zoning issue.
 {¶ 11} This Court finds that, as the date of the take was determined to be March 9, 2000, the property must be valued as of that date. The trial court correctly ruled that the probability of a zoning change could be considered in the determination of the value of the property taken because, as of the date of the take, that was the status of the land in question. It would have been improper to consider an actual change in zoning because to do so would be to value the land based upon an event occurring after the date of the take and based upon a status the land did not have as of the date of the take. See, generally, UnitedStates v. The Meadow Brook Club (C.A. 2, 1958), 259 F.2d 41, 45 (holding that while a prospective demand for a use that would affect the value of property should enter into the calculation of value, it would be improper to value the property as if it were actually being used for the different use). The Owners' first assignment of error is overruled.
 Second Assignment of Error {¶ 12} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ALLOWING PLAINTIFF'S COUNSEL TO MAKE UNSUBSTANTIATED, PREJUDICIAL, FACTUALLY BASELESS STATEMENTS TO THE JURY."
 {¶ 13} In the second assignment of error, the Owners assert that the trial court erred by permitting the Commission's counsel to make misleading and unsubstantiated statements to the jury. We disagree.
 {¶ 14} "In the presentation of closing argument to the jury great latitude is afforded counsel. The determination of whether the permissible bounds of closing argument have been exceeded is a matter resting within the trial court's sound discretion. Such a decision will not be reversed on appeal absent a showing that the trial court abused its discretion." Brads v. First Baptist Church of Germantown, Ohio
(1993), 89 Ohio App.3d 328, 343, citing Pang v. Minch (1990),53 Ohio St.3d 186, 194. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 15} In the present case, the Owners point to statements made by counsel which, they assert, warrant reversal of the judgment.[1] Specifically, the Owners point to a statement made during closing argument in which counsel stated that Mr. Emig picked the highest sales that he could find for his comparable sales in determining the valuation of the property. Additionally, the Owners point to a second statement made during closing argument in which counsel noted that Mr. Likowski did not testify because his statements could not have affected the value of the property.
 {¶ 16} With regard to the first statement, this Court finds that, even if counsel improperly stated the personal opinion that an appraiser had picked the highest sales in making a valuation, the Owners have failed to establish that such an error warrants reversal of the case. This is especially true in light of the fact that, once the statement was made, the Owners' counsel objected. Thereafter, the trial court clearly indicated to the jury that it was the jury's function, not the attorney's, to decide what the evidence in the present case meant. Regarding the second statement, we note that the statement appears to have been made in response to the Owners' counsel's statements that it was not the government who determined the proper amount of compensation but, rather, people such as the Owners who made the decision. The statement is a portion of a comment by the Commission's counsel to the jury that the value of the land is determined by considering all of the factors that affect the land, such as configuration and access. Notably, as this was a civil action, it was not improper to comment to the jury on the failure of Mr. Likowski to testify. See, generally, Smith v.Lautenslager (1968), 15, Ohio App.2d 212, 213-14. Further, even if the statement was erroneous, the Owners do not demonstrate that the statement was sufficiently prejudicial to warrant reversal. The Owners' second assignment of error is not well taken.
 Third Assignment of Error {¶ 17} "THE JURY VERDICT IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE, AND THE LOWER COURT'S ALLOWANCE OF SAID VERDICT, IN VIOLATION OF OWNERS' CONSTITUTIONAL AND STATUTORY RIGHT TO FAIR AND JUST COMPENSATION IS PLAIN ERROR."
 {¶ 18} In the third assignment of error, the Owners assert that the verdict was against the manifest weight of the evidence. We disagree.
 {¶ 19} When the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." Ray v. Vansickle (Oct. 14, 1998), 9th Dist. Nos. 97CA006897/97CA006907.
 {¶ 20} "`The [reviewing] court *** weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'"State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 21} Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts." Karches v. Cincinnati
(1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id. "`As long as the verdict is within the range of all the valuation testimony, a judgment will not be reversed on the weight of the evidence.'" Jacksonv. Hill (Nov. 22, 1996), 4th Dist. No. 95CA774, quoting Coalton v.Atkins (Sept. 26, 1990), 4th Dist. No. 608.
 {¶ 22} The jury was exposed to a wide range of evidence. The record discloses that the Owners offered evidence through the testimony of John Emig. Mr. Emig, a real estate appraiser, stated that the total compensation due to the Owners was $1,150,000, a sum of $105,000 per acre. Mr. Emig testified that he based his appraisal on a personal inspection of the property and a comparison to other similar properties. He felt that the highest and best use of the property was for commercial development purposes and valued the property accordingly. Mr. Emig testified that, although a portion of the property was zoned residential at the time of the take, he did not use any residential properties for comparison purposes. Mr. Emig also testified that he did not consider any impact on the comparable sales based on the interchange improvements but that he did not believe that it had affected the properties. He stated that he was aware that any benefits that might occur to nearby properties because of the interchange should not be considered in valuing the subject property.
 {¶ 23} Alternatively, the Commission offered evidence through Wesley Baker, a real estate appraiser. Such evidence fixed the amount of compensation due as $275,000. Mr. Baker described the property as speculative commercial/retail based upon factors that he considered inherent problems. He noted that the property had been vacant since the time that the original turnpike interchange had been constructed more than fifty years ago. He also noted that, at the time of the take, a portion of the property was zoned residential but that he felt that the property's biggest problem was road access, not zoning. Mr. Baker explained that the only way to access the property was to bring a road through a residential neighborhood. Specifically, the property in question was bordered by residential zoning on two sides and those properties would demand buffering before the property in question could be developed as commercial. Another problem cited by Mr. Baker was the fact that a 40 foot gas line easement traverses the property and prevented permanent structures from being built over that portion of the property. Additionally, he mentioned that the property had an irregular parcel shape and an on-sight drainage creek that a developer might have to culvert. Mr. Baker testified that he valued the property by determining the value of good usable land and then adjusting down due to the land's inherent problems.
 {¶ 24} In the present case, the Owners essentially assert that, because the jury's determination of the amount of compensation due to the Owners does not correspond with the opinions of value offered by the witnesses, the jury's verdict must necessarily be against the manifest weight of the evidence. Notably, however, "the jury is not required to reach a conclusion as to fair market value that is identical with the opinion of one of the witnesses testifying in the case." Sugarcreek Twp.Bd. Of Trustees v. Farra (Apr. 17, 1998), 2nd Dist. No. 97-CA-90. Clearly, the jury's determination in the present case fell within the range of values offered by the witnesses. We conclude that the verdict is not against the manifest weight. The Owners' third assignment of error is overruled.
 Fourth Assignment of Error {¶ 25} "THE TRIAL COURT ERRED BY ALLOWING PLAINTIFF TO USE AN UNSWORN DEPOSITION TRANSCRIPT TO ATTACK OWNERS' EXPERT WITNESS' CREDIBILITY."
 {¶ 26} In the fourth assignment of error, the Owners assert that the trial court erroneously permitted the Commission's counsel to use a portion of an unsworn deposition transcript to question a witness. The Owners do not elaborate upon this assigned error nor do they argue why this alleged action constituted error. Moreover, the Owners have failed to cite to any legal authority that would support this assignment of error.
 {¶ 27} "An appellant bears the burden of affirmatively demonstrating error on appeal." Hutchison v. Henderson, 9th Dist. No. 20862, 2002-Ohio-4521, ¶ 39. An appellant's brief must contain argument and law, "with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7). If the party presenting an assignment of error for review "fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief" this Court may disregard the assignment of error. App.R. 12(A)(2).
 {¶ 28} As the Owners have failed to cite to any legal authority that would support the fourth assignment of error, we shall disregard this alleged error. See App.R. 12(A)(2). Accordingly, this Court will not address the Owners' fourth assignment of error.
 {¶ 29} The Owners' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Probate Division is affirmed.
 {¶ 30} The Court finds that there were reasonable grounds for this appeal.
 {¶ 31} We order that a special mandate issue out of this Court, directing the , County of , State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
 {¶ 32} Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
CARR, P.J. and WHITMORE, J., concur.
[1] In their argument, the Owners refer to an additional statement that, they assert, should not have been admitted. However, this statement does not appear in the portion of the transcript that they have referenced. Accordingly, this court will not consider their argument with regard this alleged statement.