In re Appropriation of Property and Lands of Yurich, Jr., et al.

(No. 811485—Decided July 9, 1966.)

Probate Court of Cuyahoga County.

*Mr. John T. Corrigan*, prosecuting attorney, and *Mr. John L. Dowling*, for county treasurer.
*Mr. Robert Yurich*, for property owner.

Bartunek, J.  This matter came before the court for hearing on May 11, 1966, on the motion of the property owner, filed January 24, 1966, for the apportionment of real estate taxes on certain property which had been appropriated by the state of Ohio for highway purposes.

At a prior time, by agreement of counsel for both sides, the question of apportionment of real estate taxes for this property had been submitted to a referee of this court for decision.  After giving full and complete consideration to the facts and law, on April 6, 1966, the referee rendered a decision ordering the apportionment of real estate taxes as of the date the state of Ohio took possession of the property.  Said decision is adopted in full and made a part hereof as if fully rewritten herein.

The sole question raised by these proceedings is, at what time does a property owner's liability to pay real estate taxes terminate when the state appropriates his property for highway purposes?

The undisputed facts are:

1. The resolution and finding of the State Highway Director was filed with the court on April 5, 1965.

2. On May 24, 1965, the court ordered the property owner to vacate the structures and the property on or before June 30, 1965.

3. The state took possession of the property on June 28, 1965, razed the buildings thereon, and commenced to construct a highway.

4. On November 18, 1965, the property owner made application to the county auditor for apportionment of real estate taxes on the property so taken.

5. A jury verdict determining the compensation to be paid to the property owner for the property taken was rendered on January 17, 1966. Interest was found to be due from June 28, 1965.

6. The instant proceeding, a motion seeking apportionment of real estate taxes, was filed by the property owner on January 24, 1966.

7. The journal entry confirming the jury verdict as to the amount of compensation due was filed on February 3, 1966.

The property owner contends that Section 319.20 and Section 319.201, Revised Code, as amended effective October 30, 1965, require the apportionment of the real estate taxes as of June 28, 1965, and further aver that even if the said sections did not apply, that equity would require the apportionment of these real estate taxes as of the June 28th date, because at that time the property owner lost full control and dominion of the property.

The county treasurer contends that there was no journalization of a court order transferring title and ownership of the property to the state in 1965, and since the salient provisions of Section 319.20, and Section 319.201, Revised Code, did not become effective until October 30, 1965, these sections as amended and enacted cannot be considered in the instant matter because of the provision of Section 1.20, Revised Code, which prohibit amendments and new enactments from applying to pending proceedings, and therefore the property owner should pay real estate taxes for all of the years 1965 and 1966.

Before we can give consideration to the contentions of the parties, however, we must examine the law that was in existence prior to the filing of this matter.

The right of eminent domain is one of the last vestiges of

sovereign power remaining to a republican form of government in modern times. Granted by Article I, Section 19 of the Ohio Constitution, it is further supplemented by enactments in various chapters of the Revised Code. It is a very necessary power of government, particularly in the building of highways. But because it is such an awesome power, the taking of private property for public use is very carefully guarded and the private property owner must be vigilantly protected by the courts and agencies of government.

In 1951, *In re Appropriation of Easement*, 90 Ohio App. 471, it was held:

"Where private property upon which structures are situated is sought to be appropriated by the director of highways for highway purposes, the vesting of title to such structures is stayed and entry upon the premises for the removal of such structures is prohibited by Section 1178-39, General Code (Section 5519.03, Revised Code), until after assessment by a jury of the values respectively, of the land and structures."

This decision meant that the state could not enter onto private property where there were structures until a jury had been duly impaneled and compensation had been determined according to law for those structures and for the land so taken. Under such circumstances, therefore, the title would be transferred to the state at the time of the jury verdict and, of course, the real estate taxes would be prorated as of that date.

The court ruling, however, threatened the progress of the state highway program because it delayed the acquisition of property sorely needed, and so the Legislature devised a method whereby property could immediately be made available to the highway authorities and yet still afford to the owner ample time to prepare his case for the proper jury trial.

This new method became known as a "quick take" procedure and was incorporated into the provisions of Section 5519.03, Revised Code, effective October 5, 1955. Under this procedure, the state is authorized to immediately seize the property for its highway construction program, while preserving by a system of three appraisals the elements that are to be considered by a jury for a determination of value at a later time.

Enactment of this procedure, however, did not change the

basic rights of the property owner to have his property valued as of the time the state took over the property, as was set forth in a 1951 case, *In re Stickels*, 64 Ohio Law Abs. 356, where it was held:

"The taking (of the property) occurs at the time the condemnor takes possession of the property appropriated or alternatively at the time of the trial in the absence of a prior subjugation of the property by the condemnor to possession, occupancy and enjoyments of use."

Unaffected by the amendment to Section 5519.03, Revised Code, this ruling of the court, in the opinion of the writer, was the law on June 28, 1965, the date that the subject property was subjugated to the will of the state by virtue of a court order, and clearly indicates that since all of the indicia of ownership in the property was taken away from the owner at the time of such a taking, certainly all responsibility to pay real estate taxes must terminate at that time.

The county treasurer points out that an opinion of the attorney general, rendered in 1962, holds contrary to the *Stickels* case, where in 1962 OAG 3068, it was held:

"In an appropriation action for highway purposes pursuant to Section 5519.01 et seq., Revised Code, title to the property acquired passes to the state upon journalization of the verdict.

"Under Section 5719.01, Revised Code, the lien of the state for taxes on real estate for a particular year attaches on the first day of January of that year, and in a condemnation action filed under Section 5519.01 et seq., Revised Code, in which the verdict is journalized after January 1, 1962, the condemnee is obliged to pay the taxes for the entire year of 1962."

We cannot agree with the county treasurer, nor indeed with the 1962 attorney general's opinion. For to do so would be to completely deny the property owner the just compensation that is due to him under the protection of the Fifth Amendment to the United States Constitution.

The county treasurer does not contend that the property is to be valued on any other date than the date of the taking on June 28, 1965. Indeed, he even agreed to pay interest on the amount of compensation from that date. How then can he insist that the owner pay real estate taxes after that date?

And this was the thinking of the Legislature, when faced with the confusion generated by the erroneous attorney general's opinion, that body enacted Section 5713.08, Revised Code, effective October 30, 1965, which provides in part:

"* * * Real property acquired by the state in fee simple under Chapter 5501. or 5519., Revised Code, for highway purposes is exempt from taxation from the date of acquisition of title or date of possession whichever is the earlier date * * *. The proportionate amount of taxes that are a lien but not yet determined, assessed, and levied for the year in which the property is acquired, shall be remitted by the county auditor * * *."

Another amendment to existing law enacted by the Legislature to end this confusion, also effective October 30, 1965, was the change in Section 319.20, Revised Code, which now, among other things, provides:

"* * * Whenever the state acquires an entire parcel or a part only of a parcel of real property in fee simple under Chapter 5501. or 5519., Revised Code, for highway purposes, the county auditor, upon application of the grantor or property owner or the state, which application shall contain a description of the property as it appears on the tax list and the date of transfer of ownership, shall prepare an estimate of the taxes that are a lien on said property but have not been determined, assessed, and levied for the year in which the property was acquired. The county auditor shall thereupon apportion such estimated taxes proportionately between the grantor and the state for the period of the lien year that each had or shall have had ownership of the property."

Therefore it has been the law since 1951, was the law on June 28, 1965, and has been restated as the law by the Legislature as of October 30, 1965, that real estate taxes must be apportioned between the state and property owner as of the date of the actual taking of the property, which in this case was June 28, 1965.

To hold otherwise would be to show a complete disregard for all of the principles of justice and equity that are the very foundation of our nation.

A journal entry of the court gave the state of Ohio the absolute right to divest the property owner of his property on June 30, 1965. But even before, on June 28, 1965, the state

commenced tearing down the structures that were upon the land and started the construction of a highway. How then would the taxes be computed? Is the owner required to pay real estate taxes for a year and one-half on structures that did not even exist, much less that he is not able to possess, hold and use? Or are his taxes in 1966 to be based upon the value of the road that traverses the property he once owned?

The law permitting the taking of private property before a jury could assess the value thereof was enacted for the benefit of the state and its citizens so that the highway program could proceed as rapidly as possible. But the provisions of that law do not contemplate that the owner of private property should be penalized because of the great need for a highway. And to require the property owner to pay real taxes for a year and one-half after he was forced off of his property would be such a penalty that cannot be countenanced by this court. It is therefore the decision of this court that the real estate taxes on the subject properties shall be apportioned as of June 28, 1965, and that the property owner shall not be liable for said taxes thereafter, and we hereby order the county auditor to correct the records accordingly.

For the reasons stated above we find that it is unnecessary to rule upon the contention of the county treasurer in respect to the effect of a legislative amendment on a matter that is a pending proceeding.