[Cite as *Putnam Cty. Bd. of Commrs. v. Weis*, 2019-Ohio-3720.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

BOARD OF COUNTY COMMISSIONERS
OF PUTNAM COUNTY, OH,

      PLAINTIFF-APPELLEE,                CASE NO. 12-19-01

      v.

WILLIAM R. WEIS, ET AL.,           O P I N I O N

      DEFENDANTS-APPELLANTS.

BOARD OF COUNTY COMMISSIONERS
OF PUTNAM COUNTY, OH,

      PLAINTIFF-APPELLEE,                CASE NO. 12-19-02

      v.

MARK G. MAAG, ET AL.,            O P I N I O N

      DEFENDANTS-APPELLANTS.

**Appeals from Putnam County Common Pleas Court**
**Trial Court Nos. 2018-CV-23 and 2018-CV-26**

**Judgments Affirmed**

**Date of Decision: September 16, 2019**

Case Nos. 12-19-01, 12-19-02

**APPEARANCES:**

*Linde Hurst Webb* **for Appellants**

*Frank J. Reed, Jr. and Stephen E. Chappelear* **for Appellee**

**SHAW, J.**

**{¶1}** Landowners-appellants, Mark Maag, Patricia Maag, William Weis, and Mary K. Weis (collectively, the "landowners"), bring these appeals from the January 28, 2019, and February 6, 2019, judgments of the Putnam County Common Pleas Court awarding landowners compensation for land that had been appropriated by the Board of Putnam County Commissioners (the "commissioners") to widen County Road 5 ("Road 5"). On appeal, landowners contend that the trial court erred by refusing to dismiss the commissioners' applications for appropriation for failure to meet the requisite statutory requirements, that the trial court erred by determining the "date of the take," that the trial court erred by consolidating all of the jury trials, that the trial court erred when it "conditioned a new trial date on the landowners waiving their constitutional right to separate trials," and that the trial court erred by excluding the testimony of a rebuttal witness at trial.

*Background*

**{¶2}** In 2012, commissioners filed appropriation petitions seeking to widen Road 5 in part to accommodate truck traffic to an industrial park. While litigation was ongoing in both the trial court and this Court, the widening of the road was completed in October of 2012.[1]

**{¶3}** In 2014, this Court determined that the commissioners did not follow the proper procedures for the road-widening project. *See State ex rel. Patrick Bros., A Gen. Partnership v. Putnam Cty. Bd. of Commrs.*, 3d Dist. Putnam No. 12-13-05, 2014-Ohio-2717, *appeal not accepted* 141 Ohio St.3d 1422, 2014-Ohio-5567. Subsequently, after further proceedings occurred at the trial court level, this Court directed the commissioners to dismiss the appropriation cases that had been previously filed and to refile them once the proper procedures had been followed. *See Putnam Cty. Bd. Of Commrs. V. Patrick Bros., et al.*, 3d Dist. Putnam No. 12-15-06, (Dec. 21, 2015).[2]

**{¶4}** In 2018, commissioners filed thirteen appropriation cases against the Road 5 landowners. The refiled cases were done after a unanimous vote of the commissioners pursuant to a freeholders petition submitted under R.C. 5555.06.[3]

---

[1] An affidavit included in the record states that widening Road 5 began on May 31, 2012, and was completed in October of 2012.

[2] We placed this case on our accelerated calendar and it was ultimately dismissed. Although our accelerated calendar prevents cases from being cited as legal authority, we cite it here only to help provide background for this matter.

[3] To an extent, landowners contest this issue. At least they argue that the unanimous resolution was not attached to the refiled complaints.

The commissioners also determined that the appropriation was necessary, which was stated in the applications for appropriation. Attached to the individual petitions for appropriation were the 2011 appraisals with offers to pay the assigned value of the property.

{¶5} Only two of the thirteen appropriation cases proceeded to a jury verdict and those two cases are the subjects of this appeal. One of the properties, the Weis property, had .0298 net acres appropriated for a perpetual, permanent easement.[4] The second property, owned by the Maags, had .6681 acres of property appropriated.[5]

{¶6} The trial court set the matters for trial on October 9-12, 2018, using an abbreviated scheduling due to R.C. 163.22, which requires appropriation proceedings to "be advanced as a matter of immediate public interest and concern and shall be heard by the court at the earliest practicable moment." All of the cases were consolidated for purposes of trial under Civ.R. 42(A), with the trial court finding that they presented common questions of law and fact. Landowners challenged the consolidation, requesting separate individual trials, but this was denied by the trial court.

---

[4] In total, the Weis family owned just over half an acre in gross acres, .56. In net acreage, the size of their property went from .5003 acres to .4705 net acres after the appropriation.

[5] The Maag property, also sought (retroactively) temporary easements for roadway crew to be on part of the land for construction purposes, even though it had already been completed.

{¶7} On August 3, 2018, a pretrial hearing was held wherein landowners filed a motion to continue the October trial date. Landowners contended that they needed additional time to get their own appraisals of the appropriated property completed. The trial court inquired as to why the landowners were only just now, so many years after the actual physical appropriation, and over six months into the current action, attempting to get their own appraisals. Unsatisfied with landowners' response, the trial court denied the motion to continue the trial date. Landowners then again attempted to sever the trials. The commissioners argued that this was just another attempt at delaying the matter. Although the trial court again refused to sever the trials, in order to prevent confusion on valuing the properties an entry was issued that one jury would hear the evidence on each property, make a finding as to compensation for that property, and then proceed to value the appropriation of the next property.

{¶8} A jury trial was held on October 9-11, 2018.[6] The jury heard testimony from the landowners as to what they felt they were owed in compensation, and then the jury heard from the commissioners' appraiser. Ultimately the jury awarded the Weis family $10,000, consistent with the commissioners' appraisal, and the jury

---

[6] Three cases actually proceeded to trial, but only two were tried before the jury. It appears the third matter settled and it is not a subject of this appeal.

awarded the Maag family $6,755 consistent with the commissioners' appraisal.[7]

Judgment entries finalizing the verdicts were filed January 28, 2019, and February

6, 2019, respectively.  It is from these judgments that landowners appeal, asserting

the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court erred by refusing to dismiss the commissioners'**
**applications for appropriation for failure to meet the**
**requirements of R.C. 163.04 and R.C. 163.041.**

**Assignment of Error No. 2**
**The trial court erred by determining the "date of take" was May**
**31, 2012.**

**Assignment of Error No. 3**
**The trial court erred by ordering all of the landowners' jury trials**
**be consolidated.**

**Assignment of Error No. 4**
**The trial court erred when it conditioned a new trial date on the**
**landowners waiving their constitutional right to separate trials**
**and challenging the consolidation of jury trials.**

**Assignment of Error No. 5**
**The trial court erred when it excluded the landowners' witness**
**Robert Hunt in rebuttal.**

{¶9} For ease of discussion we elect to address some of the assignments of

error out of the order in which they were raised.

---

[7] William Weis testified that he was seeking $37,800 in compensation.  He testified that although the property to be acquired was .0298 acres out of roughly half an acre, he argued that he was losing 10 feet of the 24 feet of the frontage of his property.  He felt that this loss of approximately 42% of his frontage entitled him to 42% of the value of the *entire* property.  Mark Maag testified that he was seeking $72,154 for the .6681 acres that was taken from him.  He felt that he was losing 10 percent of the front of his property and 10 percent from the side, so he should be entitled to 20% of his property value, $60,000, plus $9,754 for land, and $2,400 for landscaping.

*Second Assignment of Error*

{¶10} In landowners' second assignment of error, they argue that the trial court erred by determining that the "date of the take" was May 31, 2012, approximately when construction to widen Road 5 began. Specifically, landowners contend that while the Road 5 construction began on May 31, 2012, having their land valued as of the date of an "illegal take"[8] is unjust, and the date of the take should have been set later, particularly when "valid" applications for appropriation had been filed by the commissioners.

Standard of Review

{¶11} The determination of the "date of the take" in an appropriation action is an issue of law that we review *de novo*. *Ohio Dept. of Nat Resources v. Thomas*, 3d Dist. Mercer No. 10-16-05, 2016-Ohio-8406, ¶ 68.

Analysis

{¶12} The Supreme Court of Ohio has specifically set guidelines for determining the "date of take" for valuation purposes in appropriation actions. "It is recognized in this state that property taken for public use shall be valued as of the date of trial, that being the date of take, *unless the appropriator has taken possession*

---

[8] It is unclear what the landowners are basing the phrase "illegal take" upon. Even when we found that the commissioners had not followed the proper procedures in *State ex rel. Patrick Bros., A Gen. Partnership v. Putnam Cty. Bd. of Commrs.*, 3d Dist. Putnam No. 12-13-05, 2014-Ohio-2717, *appeal not accepted* 141 Ohio St.3d 1422, 2014-Ohio-5567, we still found that the commissioners had the *authority* to take the land so long as the right procedures were followed.

*prior thereto, in which event compensation is determined as of the time of the taking.*" (Emphasis added.) *Director of Highways v. Olrich*, 5 Ohio St.2d 70, 72, (1966) citing *In re Appropriation for Highway Purposes*, 167 Ohio St. 463 (1958); *Nichols v. City of Cleveland*, 104 Ohio St. 19 (1922); *Board of Education of Cleveland City School Dist. V. Hecht*, 102 Ohio App. 521 (8th Dist.1955); *In re Appropriation of Easement for Highway Purposes*, 90 Ohio App. 471 (2d Dist.1951).[9]

{¶13} Based on the explicit language of the Supreme Court of Ohio in *Olrich*, where an appropriating authority has taken possession of land prior to trial, the appropriated land should be valued *at the time of the taking*. Here it is essentially undisputed that the Road 5 project commenced May 31, 2012, and was finished in October of 2012. The trial court determined that 2012 was the proper time for the take because it was when the commissioners "came upon [landowners'] property to complete the widening of County Road 5." (Doc. No. 191). The trial court's determination is in clear compliance with the *Olrich* holding.

{¶14} Nevertheless, landowners contend that the commissioners essentially unlawfully occupied the land for Road 5 from May 31, 2012, until the time of trial, and that the landowners were not being compensated for it. This of course ignores

---

[9] We recognized the *Olrich* holding as controlling authority for appropriation actions in *Ohio Dept. of Nat Resources v. Thomas*, 3d Dist. Mercer No. 10-16-05, 2016-Ohio-8406, but found that a flowage easement, which had to be determined over a period of time to be a taking, was a slightly different matter than what is presented here in a more traditional case.

the fact that the landowners are being compensated as though the land was purchased when the government entered onto it. The few cases cited by landowners such as *Becos v. Masheter*, 15 Ohio St.2d 15 (1968), do nothing to contradict the *Olrich* holding's applicability to this matter, and therefore we see no reason to depart from *Olrich*.[10] Therefore, landowners argument is not well-taken, and their second assignment of error is overruled.

*First Assignment of Error*

**{¶15}** In landowners first assignment of error, they argue that the trial court erred by refusing to dismiss the commissioners' applications for appropriation in this matter. Specifically, they argue that commissioners failed to comply with R.C. 163.04, 163.041, and R.C. 163.59(E), by "neglecting to serve" a good-faith offer, and by failing to obtain new appraisals and title work when the appropriation action was filed this time. In addition, the landowners argue that the commissioners failed to pass a unanimous resolution and attach it to the petitions.

Standard of Review

**{¶16}** At least one Ohio Appellate Court has found that the issue of proper service or notice pursuant to R.C. 163.04(A) is jurisdictional in nature, and thus a legal matter, which we would review *de novo*. *Dublin v. Beatley*, 5th Dist. Delaware

---

[10] The *Becos* case dealt with a situation where property had depreciated in value due to a county acquiring other properties in the vicinity and demolishing buildings. It was determined that in such a situation, where the government's action caused the diminution in value before they entered onto a property, the date of the take could be set earlier. It has no relevance to the case before us.

No. 16CAE040021, 2016-Ohio-5606, ¶ 16.[11]  Any related issues that deal with factual questions, however, are reviewed under an abuse of discretion standard. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  An abuse of discretion is a decision that is unreasonable, arbitrary, or unconscionable.  *Id.*

Analysis

**{¶17}** Initially we observe that the "notice" requirements for an appropriation action are contained in Revised Code 163.04, which reads as follows.

> **(A) At least thirty days before filing a petition pursuant to section 163.05 of the Revised Code, an agency shall provide notice to the owner of the agency's intent to acquire the property. The notice shall be substantially in the form set forth in section 163.041 of the Revised Code.**[12]
>
> **(B)  Together with the notice that division (A) of this section requires, or after providing that notice but not less than thirty days before filing a petition pursuant to section 163.05 of the Revised Code, an agency shall provide an owner with a written good faith offer to purchase the property.** * * *
>
> **(C) An agency may appropriate real property only after the agency obtains an appraisal of the property and provides a copy of the appraisal to the owner or, if more than one, each owner or to the guardian or trustee of each owner. * * * When the appraisal indicates that the property is worth less than ten thousand dollars, the agency need only provide an owner, guardian, or trustee with a summary of the appraisal. The agency shall provide the copy or summary of the appraisal to an owner, guardian, or trustee at or**

---

[11] Although we would typically address jurisdictional-related issues first, there is no jurisdictional problem here and the discussion *infra* is briefly informed by a definitive determination on the "date of take" issue that we already addressed in the second assignment of error.

[12] Revised Code 163.041, which is referenced in R.C. 163.04(A), contains a "form of notice" that is essentially a sample letter to be sent to a landowner.  The sample letter contains written notices of receiving an offer for the value of the property, notice that the landowners are not required to accept that offer, and notice that if the parties cannot agree the taking may still occur.

**before the time the agency makes its first offer to purchase the property.** * * *

{¶18} In this case, it is undisputed that landowners received notice letters of the commissioners' intent to acquire their property on October 20, 2017, which contained a copy of an appraisal report assigning value to the appropriated property. The notice letter stated that if landowners agreed with the value, the county would pay the appraised value, but if the landowners did not agree to the value, discussions could be held upon the fair market value of the appropriated land. The notice letter further stated that if no agreement was reached, a jury of eight people would decide the fair market value of the land.

{¶19} Landowners initially argued to the trial court that the notice they received was insufficient and did not comply with R.C. 163.04. The trial court disagreed, reasoning as follows.

> **The property owners have individually lived with this appropriation proceeding[] for six years. In addition to the notices they received in the original 2012 case, they received a new notice by letter dated October 20, 2017. In addition, their attorneys received verbal and written notices of the Commissioners' intent to acquire the property and, all parties received actual notice of the take by way of the fact that the construction project, the subject of the take was completed years earlier. What more notice can the legislature expect when the appropriation takes place after the take is completed?**

(Doc. No. 119). We agree with the trial court that landowners were properly put on notice in this matter pursuant to R.C. 163.04.

**{¶20}** Nevertheless, landowners contend that even if some notice was given, it was not compliant with R.C. 163.04(B) and (C) because the appraisals that were submitted had not been updated, meaning that the offers contained therein did not constitute "good-faith" offers. Landowners contend that R.C. 163.59(E) required the appraisals to be updated because more than two years had passed since the original appraisals had been completed. Revised Code 163.59(E) reads as follows.

> **(E)  If information presented by the owner or a material change in the character or condition of the real property indicates the need for new appraisal information, or *if a period of more than two years has elapsed since the time of the appraisal of the property, the head of the acquiring agency concerned shall have the appraisal updated or obtain a new appraisal*. If updated appraisal information or a new appraisal indicates that a change in the acquisition offer is warranted, the head of the acquiring agency shall promptly reestablish the amount of the just compensation for the property and offer that amount to the owner in writing.**

(Emphasis added.)

**{¶21}** The trial court addressed the matter of whether "updated" appraisals were necessary in this matter directly, disagreeing that R.C. 163.59(E) mandated new appraisals here. The trial court found that in a situation such as this where the date of the take for the original appraisals was 2012, and the date of the take for the current appropriation action was *still* 2012, there was no need for new appraisals.

> **In the case at bar, the date of the take was 2012 and the appraisal was 2011. It's this Court's determination that the two year update mandated by Rev[.] Code 163.59(E) does not apply to a case in *which the take had already taken place and the date of the valuation has not changed since the prior appraisal*.**

(Emphasis added.) (18CV19, Doc. No. 119).

**{¶22}** The trial court was particularly persuaded by the fact that the taking in this matter had already occurred. This was not a situation where an appropriation action had been proceeding for so long that the value in the land had changed. Here the land was valued in 2011 and taken in 2012.

**{¶23}** As we have already determined in our discussion of the second assignment of error, the 2012 "date of take" was appropriate in this matter as that was when the government actually entered upon the land and took it to widen Road 5. It would be illogical to get a new appraisal to value the land as of the date of the newly filed appropriation action when the property needed to be valued as it was in 2012.[13]

**{¶24}** Finally, the landowners argue in their brief that the commissioners failed to pass a unanimous resolution of necessity here, and that the commissioners failed to attach the unanimous resolution to the complaints in this case, rendering the complaints defective.[14] The complaints in this matter reference a resolution of necessity that had been passed; however, the old resolutions from 2012 were

---

[13] We note that the landowners' rely on *Dublin v. Beatley*, 5th Dist. Delaware No. 16CAE040021, 2016-Ohio-5606, in support of its argument that there is no jurisdiction in this matter because proper notice had not been provided. However, landowners' reliance is misplaced because *Beatley* involved a situation where an individual deliberately evaded service of notice, and an appropriating authority failed to attach appropriate documents due to neglect, whether excusable or otherwise. Neither of those situations is the case here where landowners clearly received notice.

[14] This argument is really only made in passing in landowners' brief, but they did emphasize it at oral argument.

attached to the complaints. Nevertheless, the record clearly shows that a unanimous resolution *was* passed by the commissioners in November of 2016 after public hearings on the matter wherein some landowners were present. Landowners actually included the unanimous resolution and a transcript from the hearings before the commissioners in a motion to stay these proceedings. (18CV19, Doc. No. 14, Exs. 15, 16A).

{¶25} Moreover, in the trial court's entry overruling landowners' motion for summary judgment, the trial court stated that it was not even in dispute that "[t]he refiled case was done by unanimous vote of the Commissioners pursuant to a freeholders petitioner [sic] submitted pursuant to Rev. Code 5555.06[.]" (18CV19, Doc. No. 119). Based on the record, it appears disingenuous for the landowners to now argue that they were somehow deprived of "notice" by any failure to attach the new resolution to the complaints when they were clearly aware of the new unanimous resolution, especially since they filed a case regarding the validity of the freeholder petition, which was being separately addressed in federal court.

{¶26} After reviewing the record and the applicable legal authority, we find that the notice and good-faith offers in this case provided by commissioners were compliant with the appropriate statutes. We cannot find under these circumstances that the trial court erred by declining to dismiss this case for lack of appropriate notice. Therefore landowners first assignment of error is overruled.

*Third Assignment of Error*

**{¶27}** In landowners' third assignment of error, they argue that the trial court erred by consolidating all of the jury trials.

Standard of Review

**{¶28}** The management of cases and the decision to consolidate trials is within the sound discretion of a trial court, and will not be disturbed absent an abuse of discretion. *See Director of Highways v. Kleines*, 38 Ohio St.2d 317, 319-320 (1974). An abuse of discretion is a decision that is arbitrary, capricious, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

Analysis

**{¶29}** In this case, the trial court ordered that all thirteen appropriation cases would be presented to the same jury of eight individuals. The trial court determined that the cases involved common questions of law and fact, which permitted consolidation under Civ.R. 42(A). For reference, Civ.R. 42 reads:

**(A) Consolidation.**

**(1)** *Generally***. If actions before the court involve a common question of law or fact, the court may:**

**(a) join for hearing or trial any or all matters at issue in the actions;**

**(b) consolidate the actions; or**

**(c) issue any other orders to avoid unnecessary cost or delay.**

**{¶30}** Here, the landowners argue that the trial court erred in consolidating the cases, claiming that each property had individual characteristics and different owners.  Landowners also contend that R.C. 163.09(E) specifically granted them the right to separate, individual trials.  Revised Code 163.09(E) reads, "The court, with the consent of the parties, may order two or more cases to be consolidated and tried together, but the rights of each owner to compensation, damages, or both shall be separately determined by the jury in its verdict."  Landowners contend that they did not consent to a consolidation of trials, so the trials had to be separate.  We disagree.

**{¶31}** Contrary to landowners' position, the Supreme Court of Ohio has held in *Director of Highways v. Kleines*, 38 Ohio St.2d 317 (1974), that, "A trial court may order consolidation of appropriation cases pursuant to the provisions of Civ.R. 42(A) *without the consent of the parties notwithstanding the provisions of * * * 163.09(E)*."  (Emphasis added.)  *Kleines* at syllabus.  Thus a trial court *can* consolidate appropriation cases even when the parties did not agree to do so.

**{¶32}** Here, the trial court found pursuant to Civ.R. 42(A), there were common questions of law and fact related to each appropriation case.  The trial court actually explained this to the jury, stating,

> **I've combined these cases together, because we have three cases that the jury is going to decide.  There is** [sic] **three separate property owners.  I thought it would be better, instead of having three separate cases, separate cases three weeks, we would do,**

**combine them all, because the property is very similar in location, and the nature of the construction job is similar to all three pieces of property. And I thought it would be better to combine them into one, have one jury decide what is the appropriate amount to pay the property owners for the property that has been appropriated.**[15]

(Tr. at 7-8).

{¶33} Moreover, in addition to finding that the cases should be consolidated due to common questions of law and fact, the trial court actually took steps to prevent any potential confusion between the properties by the way the trial was actually structured. The trial court ordered that each property would be dealt with in its entirety before moving on to the evidence for the next property. More specifically, in this case, a single jury of eight individuals (with two alternates) was selected to hear all of the evidence in all of the trials. Opening instructions were given to the jury, then opening statements were provided concerning the first property—the Weis property. Evidence was presented by both parties specifically regarding the Weis property, exhibits were entered, closing arguments were given, then the jury deliberated regarding just compensation on the Weis property. After the verdict was returned on the Weis property, the same procedure was followed for the Maag property. Based on the way the trials were conducted, they were largely individual and separate, just in rapid succession.

---

[15] At this time the third case had not settled yet, so it seemed that three cases would be presented to the jury.

**{¶34}** Furthermore, the Second District Court of Appeals rejected a very similar argument against consolidation of trials in an appropriation matter in *Village of Wayne Lakes, Ohio v. Midwest United Industries, Inc.*, 2d Dist. Darke No. 1231, 1989 WL 125572, *4. In that case, nine separate appropriation actions were consolidated for trial on the basis that they presented common questions of law and fact. The Second District determined that the same legal standards and burdens of proof were applied throughout the cases, and that all the parcels being acquired were being used for the same purposes, permitting consolidation. This case is similar to *Wayne Lakes*, where the burden of proof was the same, common questions of law and fact were concerned, and all of the appropriated land was being used for widening Road 5. Thus *Wayne Lakes* is persuasive authority in support of the trial court's decision to consolidate the trials.

**{¶35}** Finally, we note that a trial court has the right to control its docket regarding judicial economy. *See Bender v. Diemert*, 8th Dist. Cuyahoga Nos. 58304, 58368, 1991 WL 39680 * 1 ("Civil R. 42 permits the consolidation of actions involving common questions of law or fact based upon considerations of judicial economy."). Conducting thirteen separate jury trials when the commissioners' expert appraisal witness was the same for each, the standard of proof was the same for each, and the purpose of the appropriation was the same for each would be potentially cumbersome on a trial court, and thus a trial court could certainly find

within its discretion that the interests of judicial economy supported consolidation.[16] For all of these reasons landowners' third assignment of error is overruled.

*Fourth Assignment of Error*

{¶36} In landowners' fourth assignment of error, they argue that the trial court erred when it "conditioned a new trial date on the landowners waiving their constitutional right to separate trials and challenging the consolidation of jury trials." Essentially landowners argue that the trial court erred by denying their motion for a continuance while still denying their request to sever the trials. Landowners claim that the trial court requested a "*quid pro quo*" by asking if they would waive their request to sever the trials if the trial court granted a continuance. Landowners cite no legal authority whatsoever in support of their argument.[17]

Standard of Review

{¶37} We review the denial of a motion for continuance under an abuse of discretion standard. *State v. Unger*, 67 Ohio St.2d 65, 67 (1981).

Analysis

{¶38} In order to understand landowners' argument related to this assignment of error, it is necessary to review a fairly lengthy discussion that

---

[16] We are not suggesting that a trial court must, in the interests of judicial economy, consolidate the cases; only that it is another potential reason supporting the trial court's determination.

[17] We could disregard this assignment of error for this reason alone, as failure to cite to legal authorities violates App.R. 16(A)(7). *See also* App.R. 12(A)(2); *State v. Banks*, 3d Dist. Seneca No. 13-12-18, 2013-Ohio-649, ¶ 34. However, we will continue to address the merits in the interests of justice.

occurred between the trial court and the parties' attorneys at the August 3, 2018

pretrial hearing.  In pertinent part, the discussion reads as follows.

> **THE COURT:  I believe the first thing we ought to deal with is the motion to move the trial date.  \* \* \***
>
> **\* \* \***
>
> **[LANDOWNERS' ATTORNEY]:  Eminent domain appraisers are overworked, and I did not realize when I talked to her that she wouldn't be able to have it done by that trial date.  And, she told me basically it wasn't until the end of November sometime in December that she could.  She does a lot of appraisal work here. She does a lot of appraisal work in South Carolina.  There's just not that many eminent domain appraisers that can actually come in and testify.**
>
> **THE COURT:  I didn't know that there were eminent domain appraisers.**
>
> **[LANDOWNERS' ATTORNEY]:  The ones that have experience in eminent domain, yes, Your Honor.  The before and after part.**
>
> **THE COURT:  What's the different** [sic] **between a[n] eminent domain appraiser and an appraiser?**
>
> **[LANDOWNERS' ATTORNEY]:  The difference is, is that normally appraisers come in and do what your property is worth for the purpose of sale or for a bank mortgage or anything like that, but in terms of eminent domain they have to come in and say this is the value before, and then come in and say this is the value after looking at comps that have to do more aligned to what happens after the project comes.  So that before and after difference is what I would call an eminent domain appraisal because they actually have to do two separate appraisals, they do the one before and they do the one after.  The difference between the before and after is the value of the property taken and the damages to the residue, if any, and cost to cure, if any.  Most**

appraisers, what you and I would call residential or industrial or commercial appraisers can't do that.

THE COURT: Okay. By the way, and before you answer my other questions, I'm just going to tell you in advance I'm going to require whoever you're going to be referring to as an appraiser to submit an affidavit to the Court if I do in fact grant the continuance. But when was she first contacted?

[LANDOWNERS' ATTORNEY]: When was she first contacted? I've had other cases with her, Your Honor, so it's hard for me to say. Because I mean this case has been looming for a while, but this actual trial date and the fact that it would actually occur, sometime this summer.

THE COURT: I'm sorry?

[LANDOWNERS' ATTORNEY]: Sometime this summer.

THE COURT: This summer, okay. This summer started June 21st, so it wasn't until after June 21st?

[LANDOWNERS' ATTORNEY]: Oh, time passes. I'm not sure, Your Honor.

THE COURT: Well, I can tell you that's important to me.

[LANDOWNERS' ATTORNEY]: Okay.

THE COURT: Because if knowing when the trial date is, and knowing, and I assume that you know something about appropriation work beforehand, that you have to have an appraiser[,] we have dealt with the issue of appraisal on this case for probably four years, and I have always been amazed that you all don't have an appraiser, you're arguing over their appraisal, but you don't have an appraiser, and I've mentioned that before. And, I'm just absolutely have been amazed in this whole process that you don't have one. And never have. So, if you're telling me the first time you contact an appraisal [sic] was June, knowing full well when the trial date was, somebody has to explain to me why

-21-

**it took so long to do that, knowing full well what an appropriation case is all about, and you're telling me that you need a special type of appraiser, why did you wait seven months?**

**[LANDOWNERS' ATTORNEY]: Well, part of the reason, Your Honor, is we felt like, I'm sorry, we felt like that there, the precondition has not been met to file the case. And when appraisers like that, they want money up front. And no landowner wants to pay that money if they don't think they're still going to have to go to trial. I mean the issue still looms on my mind that there is no right to have an appropriation case here because they didn't do the preconditions for it.[18]**

**So, it's not like you're hiring a $500 appraisal or something like that, they have to come up with money up front. And I don't, I'm sure that because I have other cases with her, I've talked to her about it, I don't know, I'll have to go back and look and see what if anything I put in writing to her, which can go into an affidavit to you, so it's hard for me to tell you exactly when I contacted her about this case in particular, the 13 landowners.**

**THE COURT: Okay. Have you tried to contact any other appraisers?**

**[LANDOWNERS' ATTORNEY]: I have not because the only ones that I know of are in Columbus and they're a lot more money than she is.**

**\* \* \***

**THE COURT: Okay. So, okay, let me get this straight. So no one has contacted an appraiser to appraise this property on behalf of the landowners at any point in time during this case or the previous cases until July of 2018; is that correct?**

**[LANDOWNERS' ATTORNEY]: Well, I know that I've talked to have talked to her [sic] from time to time because she came here in 2011 originally. So it's hard for me to – She came here to talk**

---

[18] This is in reference to the landowners' challenge to the notice requirements of R.C. 163.04, which we rejected in the first assignment of error.

**to people about the appraisal process and what needed to happen a long time ago.**

**THE COURT: Okay. As you know, this case is supposed to be accelerated on the Court's docket, that's why the trial was set. When I originally set the trial I didn't hear anybody tell me that that was their problem. It's a problem on the Court's schedule, because I'm scheduled throughout. Basically, I have one week, and I'm telling you if it complies with everybody else's schedule, I'm going to agree to move it a little bit, but I can tell you it's very hard for me to move cases, and you obviously didn't do your job, totally do your job. And, you know, to come to me in August – By the way, has she done anything on the case? I mean you contacted her, let's say July, June 21st, has she done anything in the last month, in the last six weeks?**

**[LANDOWNERS' ATTORNEY]: I don't remember if I sent her some. I think I sent her all of a list of people that own property on the 13, with the TD and parcel numbers, Your Honor.**

**THE COURT: Okay. So now you're telling me that you – she has not been formally retained?**

**[LANDOWNERS' ATTORNEY]: No. Everybody has to sign the formal retainer thing.**

**THE COURT: Okay. So that hasn't been done?**

**[LANDOWNERS' ATTORNEY]: No. Once she told me she couldn't make the, make the time for that trial, no.**

**THE COURT: Has she told you how long it's going to take her?**

**[LANDOWNERS' ATTORNEY]: It usually takes six to eight weeks to do it.**

**THE COURT: No, that's not my question.**

**[LANDOWNERS' ATTORNEY]: Oh, I'm sorry.**

**THE COURT: Has she told you how long it would take her to do this?**

**[LANDOWNERS' ATTORNEY]: She said the end of, she said the end of November she could have them done.**

**THE COURT: Okay. If she gets hired today?**

**[LANDOWNERS' ATTORNEY]: Yeah.**

**THE COURT: Okay. Did she tell you how long it would take her if she had gotten hired in June?**

**[LANDOWNERS' ATTORNEY]: It wouldn't have made any difference in June because she said she had all these other appraisals, and she can only do so many a month, because I said oh, my God, you're not going to get it done, and she said there's no way I could have done it in any event if it had come in earlier.**

**THE COURT: All right. Any further comments on that issue?**

**\* \* \***

**[COMMISSIONERS' ATTORNEY]: Thank you, Judge. As you know from our response to the landowners motion for continuance, we \* \* \* are still prepared to go to trial October 9th. [We] \* \* \* took careful notes during our last telephone conference with this Court April 24th. You made it very clear, Your Honor, that this trial was going forward October 9th. You said depose the appraisers. You reminded the parties that this case was going forward. That the Federal Court had not issued any stay. You, in your order April 25th denied a motion to stay filed by the landowners. You denied their motion to separate trials. You indicated that the County must disclose all of their witnesses by June 1st. We did that. You indicated that landowners had to disclose their witnesses by July 2nd. They served us June 29th with a list of over 30 witnesses who intend to testify, including their expert witness Debbie Wilcox. So we believed that as of \* \* \* June 29, 2018, the landowners [k]new that Debbie Wilcox would be the[ir] appraiser, and they knew the trial date was October 9th**

**through the 12th. So we believe that this is yet another delay tactic by the landowners, and we think that justice delayed is justice denied. So we'd ask that the trial go forward.**

**THE COURT: \* \* \* Let me ask a couple of other questions dealing with matters that are somewhat related.**

**A motion in limine has been filed dealing with several issues, and I'm going to ask [landowners' attorney] at this point, do you agree that the value that the appraiser is to do is the value as of the date of the take?**

**[LANDOWNERS' ATTORNEY]: No, Your Honor.**

**THE COURT: Okay. What do you believe the value date is?**

**[LANDOWNERS' ATTORNEY]: Well, sometime in 2018.**

**THE COURT: Okay. What leads you to believe that, that being an exception as you agree, I assume you would agree that's exception to the normal appropriation rule?**

**[LANDOWNERS' ATTORNEY]: Correct. Normally it's date of possession.**

**THE COURT: Why do you believe that's the case?**

**[LANDOWNERS' ATTORNEY]: Because they don't get the benefit of going back to 2011 when the properties [sic] worth less. That's a trespass from then until now.**

**THE COURT: What happens if it was worth more if we're in 2008 and the take was 2005, you would be seeking to go back to 2005?**

**[LANDOWNERS' ATTORNEY]: It would depend, Your Honor.**

**\* \* \***

-25-

**THE COURT:** \* \* \* But, and I want to make sure that your appraiser doesn't sit there and say, well, the Judge, you know, after she's already done an appraisal as of today, I want to make sure she does an appraisal as of 2012.

\* \* \*

**THE COURT:** All right. My only other date that I am available to try this case is the week of December 10th. Now also, I assume at this point in time that if you want me to deal with the issue that you all weren't prepared with respect to your appraiser, that you will agree to the consolidation of all these cases for a trial. Am I correct that you will do that?

**[LANDOWNERS' ATTORNEY]:** Your Honor, I – I just don't see how it can be a fair trial for 13 people in four days. I understand your thought about the chart and all that, but to go out and have a jury view, they're not going to be able to remember, I know it's not evidence, but what they use it for is to help them figure out what's going on with the property.

**THE COURT:** All right. Then I can tell you I'm not going to agree to the continuance then. All right. So, now assuming that we[']re going to go forward, I assume you [attorneys for commissioners] don't have any objections to the property owners' testifying to the value of their own property.

**[COMMISSIONERS' ATTORNEY]:** That's right, Your Honor.

**THE COURT:** Good.

(Aug. 3, 2018, Tr. at 3-16).[19]

---

[19] Following this discussion, the parties transitioned into talking about the jury trial procedure itself, beginning with jury questionnaires and peremptory challenges. Next, the trial court discussed a potential option for the trial to have the jurors deliberate after the evidence was presented with respect to each individual property. Landowners' counsel specifically stated that she thought that option would be fair for the landowners. To emphasize this point, the trial court stated that the parties should agree as to how they wanted to try the cases, with the understanding that they would be consolidated, and prepare an entry regarding that procedure.

{¶39} On appeal, landowners now argue that the trial court improperly made a "*quid pro quo*" demand toward the end of the preceding dialogue by asking if landowners were going to withdraw their objection to the consolidation of trials if the trial court granted a continuance. Landowners argue that the trial court's request that they make a concession to waive a right they felt they were entitled to was arbitrary, unjustified, and warrants reversal in this matter.

{¶40} Commissioners counter by arguing that the trial court's reasoning in denying the motion to continue the trial date, when viewed in its entirety rather than focusing on one line, shows that denying the motion to continue the trial date was well within the trial court's discretion and that the trial court did not actually make some specific "*quid pro quo*" offer. The commissioners contend that denying the continuance was reasonable here where there was no "constitutional" right to separate individual jury trials and where landowners had failed for *years* to obtain an appraiser.

{¶41} After reviewing the record, we agree with the commissioners and can find no reversible error here. Early in the August 3, 2018, pretrial hearing, the trial court seemed amenable to *potentially* moving the trial date if it was convenient for the trial court and the parties. However, upon inquiring regarding the diligence of the landowners to obtain an appraiser, the trial court was less receptive to a continuance.

{¶42} Landowners had been contesting the valuations of the commissioners' appraisals for years without ever obtaining their own appraisals specifically regarding the take.[20] The landowners even had numerous months from the filing of this new appropriation action to secure appraisals, yet they failed to do so. In addition to how late the appraiser was contacted, the trial court was further baffled by the fact that at the time of the hearing the appraiser had *still* not been *officially retained*. The landowners would have to agree to the appraiser, and there is no indication in the record that they definitely would. We also have no actual evidence in the record beyond counsel's statements that their desired appraiser actually could have the appraisals done if the trial date was moved.

{¶43} Moreover, the trial court had to deal with the fact that landowners wanted their appraiser to potentially appraise the land as of a different "date of take," even assuming that all of the landowners agreed to the appraiser in the first place. Furthermore, the trial court did not prevent landowners from contacting a different appraiser, such as one of those mentioned from Columbus, to see if that appraiser could have had the work done by the scheduled trial date.

{¶44} As the trial court emphasized, appropriation cases are accelerated on a trial court's docket. Clear orders had been issued to prepare for trial on October

---

[20] The Weis family did have an appraisal conducted of their property before the take, and the appraised amount was the same as that reached by the commissioners' appraiser ($90,000). Despite having this appraisal done, the Weis family did *not* do an "after" taking appraisal with the same appraiser to compare any loss in value.

9, 2018. Under the facts and circumstances of this case, we cannot find that there was reversible error here in denying the motion to continue. We do not accept the argument of the landowners that some impermissible "*quid pro quo*" was attempted here by the trial court. Therefore, landowners' fourth assignment of error is overruled.

*Fifth Assignment of Error*

{¶45} In landowners' fifth assignment of error, they argue that the trial court erred when it excluded their rebuttal witness, Robert Hunt.

Standard of Review

{¶46} We review a trial court's determination to bar a rebuttal witness under an abuse of discretion standard. *See Stevens v. S.W.L.H.S. Invest. Partners*, 6th Dist. Lucas No. L-15-1129, 2017-Ohio-415, ¶ 62, *appeal not allowed* 151 Ohio St.3d 1425, 2017-Ohio-8371.

Analysis

{¶47} After the landowners and the commissioners had presented their cases-in-chief in this matter, the landowners attempted to call a rebuttal witness. A sidebar was then held between the parties' attorneys and the trial court, wherein the trial court asked who the rebuttal witness was, and what he or she was going to testify about. Landowners identified Robert Hunt as their rebuttal witness, indicating that he was an appraiser, but he had not appraised these properties specifically. Rather,

-29-

Hunt was going to testify regarding a different appraisal methodology for valuing land, thus undermining or potentially contradicting the commissioners' appraiser.

**{¶48}** The trial court inquired as to why the witness had not been identified previously, and landowners indicated that he was a "rebuttal-only" witness. The trial court stated, "That's not a rebuttal witness, and you know that. * * * It's an expert witness on your behalf. * * * He's rendering an opinion on the testimony of the report that you had for seven years." (Tr. at 396). The trial court then further inquired as to what specifically the landowners claimed to be rebutting with Hunt's testimony, and landowners' counsel stated that Hunt was going to indicate how he valued the property frontage abutting the roadway in a different manner than how the commissioners' appraiser had valued it. After hearing this argument, the trial court excluded Hunt's testimony, but allowed his testimony to be proffered.

**{¶49}** On appeal, landowners argue that the trial court erred by preventing the testimony from their "rebuttal" witness because they contend that generally rebuttal witnesses do not have to be disclosed prior to trial, citing *Phung v. Waste Mgt., Inc*, 71 Ohio St.3d 408 (1994), in support of their argument.

**{¶50}** Commissioners respond by arguing that the trial court's exclusion of Hunt's testimony was proper because Hunt was going to be testifying in an expert capacity, which has different rules with respect to disclosure than those of normal rebuttal witnesses discussed in *Phung*, making it inapplicable here. In addition,

commissioners argue that Hunt was not a proper rebuttal witness because he was going to essentially present his own valuation methodology. Commissioners contend that this new or different methodology should have been presented in landowners' case-in-chief, not in rebuttal.

**{¶51}** After reviewing the record, we agree with the arguments of the commissioners. Given that Hunt wanted to present his own methodology as to valuation, he should have been called in landowners' case-in-chief to establish their version of the case.

**{¶52}** Moreover, as he was offering testimony beyond that of a lay witness, that testimony being specific ways of valuing property frontage versus the rest of the property, his disclosure would have been necessary in this matter as suggested by the commissioners.

**{¶53}** Because of these factors, at the very least, we cannot find that the trial court abused its discretion in this matter by preventing Hunt's testimony. For these reasons, landowners' fifth assignment of error is overruled.

*Conclusion*

**{¶54}** For the foregoing reasons landowners' assignments of error are overruled and the judgments of the Putnam County Common Pleas Court are affirmed.

*Judgments Affirmed*

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**